IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

CAREER NETWORK, INC., a Delaware corporation,
THREE STARS MEDIA, INC., a Delaware corporation,
THREE STARS, INC., a Missouri corporation,
D/B/A THREESTARS OF CENTRAL FLORIDA, INC.
INTERNETCOMPANY, INC., a Delaware corporation,
D/B/A INTERNET-COMPANY OF CENTRAL FLORIDA, INC.,
MEDIALOGIC, INC., a Delaware corporation,
POWER APPLICATIONS, INC., a Delaware corporation,
MONKEYJAR, INC., a Delaware corporation, and
BUZZGRUB, INC., a Delaware corporation,
                                        Plaintiffs,

vs.                                     CASE NO.: *10-CA-22724*
                                        INJUNCTIVE RELIEF SOUGHT

WOT SERVICES, LTD, a Finnish Limited partnership,
AGAINST INTUITION, INC., a Finnish corporation,
ESA SUURIO, individually,
VESA PERÄLÄ, individually,
SAMI TOLVAHEN, individually,
TIMO ALA-KLEEMOLA, individually,
DAVID STADLER aka g7w, and
JOHN AND JANE DOES 1 THROUGH 100,
all whose true names are unknown,
                                        Defendants.
_____/

LYNDA GARDNER
CLERK CIRCUIT COURT
ORANGE CO. FL

FILED IN OFFICE
CIVIL DIVISION
2010 OCT -7 PM 2: 28

## COMPLAINT

Plaintiffs, Career Network, Inc., Three Stars Media, Inc., Three Stars, Inc. (doing business in

Florida as Threestars of Central Florida, Inc.), Internetcompany, Inc. (doing business in Florida

as Internet-Company of Central Florida, Inc.), Power Applications, Inc., MonkeyJar, Inc., and

Buzzgrub, Inc. (collectively "Plaintiffs") by and through their undersigned attorney, file this

Complaint against WOT Services, Ltd., Against Intuition, Inc., Esa Suurio, Vesa Perälä, Sami

Tolvahen, and Timo Ala-Kleemola (collectively the "WOT Defendants") David Stadler, and

John and Jane Does 1 through 100 (all Defendants collectively referred to as "Defendants") and state as follows:

## INTRODUCTION

1.     This is an action at law and in equity for damages in excess of $15,000 to remedy acts of malicious, willful and intentional defamation, interference with business relationships, trade libel, civil conspiracy, fraudulent misrepresentation, misleading advertising, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") caused by Defendants' unauthorized Internet disparagement of Plaintiffs and entities and persons associated with Plaintiffs ("Associates"). Defendants have posted and continue to post false and inflammatory statements designed to intentionally attack and discredit Plaintiffs and Associates on the Internet. Defendants' defamatory attacks and false statements have caused damages to Plaintiffs and Associates in the past and such damages will continue in the future.

## PARTIES

2.     Career Network, Inc. ("CNI") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

3.     Three Stars Media, Inc. ("TSM") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

4.     Three Stars Inc. ("TSI") is a Missouri corporation authorized to do business in Florida under the name Threestars of Central Florida, Inc., with its principal place of business in Orlando, Florida.

5.     Internetcompany, Inc. ("ICI") is a Delaware corporation authorized to do business in Florida under the name of Internet-Company of Central Florida, Inc., with its principal place of business in Orlando, Florida.

6.      Power Applications, Inc. ("PAI") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

7.      MonkeyJar, Inc. ("MJI") is a Delaware corporation with its principal place of business in Dallas, Texas.

8.      Buzzgrub, Inc. ("BGI") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

9.      Upon information and belief, WOT Services, Ltd.  ("WOT Services") is organized and existing under the laws of Finland with its principal place of business in Helsinki Finland.

10.     Upon information and belief, Against Intuition, Inc. ("AII") is organized and existing under the laws of Finland with its principal place of business in Helsinki Finland.

11.     Upon information and belief, Esa Suurio ("Suurio") is a resident of Helsinki Finland and is *sui juris*.

12.     Upon information and belief, Vesa Perälä ("Perälä") is a resident of Helsinki Finland and is *sui juris*.

13.     Upon information and belief, Sami Tolvahen ("Tolvahen") is a resident of Helsinki Finland and is *sui juris*.

14.     Upon information and belief, Timo Ala-Kleemola ("Ala-Kleemola") is a resident of Helsinki Finland and is *sui juris*.

15.     Upon information and belief, David Stadler aka g7w ("g7w") is a resident of Massillon, Ohio and is *sui juris*.

16.     Upon information and belief, John and Jane Does 1 through 100 ("Doe Defendants") are individuals whose names and addresses of residence are unknown.

## JURISDICTION AND VENUE

17.     The Court has personal jurisdiction over the Defendants pursuant to *Fla. Stat.* §48.193(1)(b) as Defendants have entered into the United States and the State of Florida, via intentional and purposeful electronic communications, with sufficient minimal contacts and committed intentional torts, or in the alternative, have committed tortious conduct outside of the State of Florida with the specific intent and knowledge that an injury would occur in the State of Florida.

18.     Defendants have posted and continue to post defamatory statements about Plaintiffs and Associates on websites. These postings are accessible in Florida and have been accessed in Florida.

19.     Venue is proper in this judicial circuit as a result of Defendants' intentional, tortious and unlawful conduct which substantially occurred within this judicial circuit and Plaintiffs and Associates, who reside in and transact their principal businesses within this judicial circuit, have suffered tortious injuries within this district as a result of Defendants' conduct.

## STATEMENT OF FACTS

20.     Plaintiffs and Associates operate Internet marketing businesses, including job posting boards and online shopping communities.

21.     Upon information and belief WOT Defendants, AII, and WOT Services offer the Web of Trust (hereinafter referred to the "Website") (www.mywot.com) a self described "website rating service".

22.     Upon information and belief, Sumiro was the Chief Executive Officer of Defendants AII and WOT Services until mid 2009.

23.     Upon information and belief, Perälä is the current Chief Executive Officer of AII and WOT Services.

24.     Upon information and belief, Tolvahen was a co-founder of AII and WOT Services, a co-developer of the WOT rating system, and currently maintains an affiliation with AII and WOT Services.

25.     Upon information and belief, Ala-Kleemola was a co-founder of AII and WOT Services, a co-developer of the WOT rating system, and currently maintains an affiliation with AII and WOT Services.

26.     Upon information and belief, g7w is a member of the Website community.

27.     Upon information and belief, the Doe Defendants are members of the Website community.

28.     The WOT Defendants operate the Website which purports to be a "community-based safe surfing tool that uses an intuitive traffic-light rating system to help Web users stay safe as they search, surf and shop online."

29.     The Website indicates that the user activity rate for the United States is from 27% to 35%.

30.     The WOT Defendants maintain at least one server in the United States.

31.     The WOT Defendants have developed, designed, created, and implemented a Website rating black box system.   The rating system uses sources controlled by the WOT Defendants, and algorithms designed and controlled by WOT Defendants.   The WOT Defendants control the algorithms, the sources, and the weight given to each source.

32.     The system processes ratings and calculates the reputation for each website using sophisticated algorithms. The WOT Defendants give different weights to the sources used based

on their type and methodology, which means that one source can have a much larger effect on the reputation than another.

33. Because the WOT Defendants are responsible for creating and developing information provided through the Internet they therefore meet the definition of an "information content provider" under the Communication Decency Act of 1996, *47 USCS § 230* ("CDA").

34. The WOT Defendants have conspired with g7w and the Doe Defendants to manipulate the algorithm so that members who post predominantly negative reports are given higher credibility ratings and therefore their posts are given more weight in the black box rating system used by the WOT Defendants.

35. The WOT Defendants have and continue to abuse their self-created algorithm to achieve their self serving results. The WOT Defendants are aware that members can and do abuse the black box system by posting false and defamatory statements about individuals and companies and not only have taken no action to stem this abuse, in fact they encourage and reward members who abuse the system. The more sites members rate, irrespective of the accuracy of their ratings, the higher their credibility ratings and the more weight their ratings have in the algorithm.

36. The WOT Defendants attempt to justify their manipulation by stating on the FAQ section of the Support Tab of the Website,

> While our primary source of knowledge is ratings from our users, we also take advantage of hundreds of carefully chosen trusted sources, such as listings of phishing sites from PhishTank. This provides WOT with a fast, automated, and reliable means of protecting our users from new, rapidly spreading online threats.

37.    Additionally, in a post on the Website's blog dated December 22, 2006, Tolvahen

states:

> As already discussed in a number of previous posts, not everyone has an equal say
> in WOT reputations. You must prove yourself before we take you seriously. This
> makes it more difficult to manipulate the system, and also allows us to more
> precisely compute exactly how much the reputation estimates can be trusted. In
> addition to reputation, our algorithms also calculate another value, the confidence
> in the reputation.

38.    In another post dated October 5, 2006, Tolvahen states, in part:

> **Trust is subjective**
> In WOT, website reputations are computed using an algorithm loosely based on
> Bayesian probability. Each testimony is weighted by how much the system trusts
> the user or other source who gave it.

> **Personal reputation**
> Once you have shared your opinion on a fair number of websites, WOT starts
> looking for other users who agree with you. These users are ranked by how well
> their testimonies match yours, and the most compatible of the group become your
> friends. You will never know who they are nor will they know you, but when
> WOT computes the reputations to show on your extension, their testimonies
> weigh more than those from other users. This makes it possible for WOT to better
> adapt to what you personally trust, while still not ignoring the overall opinion.

39.    The WOT Defendants encourage their employees and other individuals associated

with WOT Services and AII to post false negative and defamatory statements to raise the

Website's ranking on Internet search engines.

40.    The defamatory postings are accessible in Florida and have been accessed in

Florida. See attached Exhibit "A".

41.    The WOT Defendants actively post to the Website and WOT community,

including rating and commenting on individual websites.

42.    Suurio is the former CEO of WOT Services and/or AII and is an active platinum

member of the WOT community posting under the name "soran". See attached Exhibit "B".

43.     Perälä is the current CEO of WOT Services and/or AII and is an active silver member of the WOT community posting under the name "vesa p". See attached Exhibit "C".

44.     Tolvahen, an employee of WOT Services and/or AII and is an active platinum member of the WOT community posting under the name "sami". See attached Exhibit "D".

45.     Ala-Kleemola, an employee of WOT Services and/or AII and is an active platinum member of the WOT community posting under the name "timo". See attached Exhibit "E".

46.     The WOT Defendants also encourage and support abuse of its rating system by awarding the abusive Website members Platinum memberships, the Website's highest level of credibility and weight, and reward them with annual awards such as the "Scam Buster" Award and the "Top Member" Award.

47.     g7w is a platinum member of the WOT community. See attached Exhibit "F".

48.     g7w has been a member of the WOT community since November 2008. As of September 16, 2010, less than two years after he became a member, he has an activity score of 51,607; has posted 522,824 ratings and 548,675 posts. That equates to over 830 posts every day over the 22 month period he has been a member.

49.     The WOT Defendants awarded g7w the "Scam Buster" and "Top Member" Awards for 2009.

50.     A review of several random pages (in excess of 50 pages) of the 13,587 pages of scorecard comments posted by g7w, less than ten (10) were positive posts.

51.     g7w has posted defamatory information regarding the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.

52.    At all times material hereto g7w posted the false information with knowledge and/or reckless disregard for its falsity.

53.    g7w intended that the false postings would injure the Plaintiffs' and Associates'' business and personal reputations in the State of Florida.

54.    g7w's postings to the Website are accessible in Florida and have been accessed in Florida.

55.    One of the Doe Defendants, known only as "difrawi_difrawy", is a platinum member of the WOT community.  See attached Exhibit "G".

56.    difrawi_difrawy has been a member of the WOT community since March 2009. As of September 16, 2010, a year and a half after he became a member, he has an activity score of 12,358; has posted 5,928 ratings and 4,421 posts.

57.    All of difrawi_difrawy's 5,928 ratings and 4,421 posts are directed at the Plaintiffs and Associates.  In fact, his screen name "difrawi_difrawy" is alternative spellings of the name of a person associated with Plaintiffs.

58.    It is clear that difrawi_difrawy has a vendetta against the Plaintiffs and Associates.

59.    The WOT Defendants have not only allowed this vendetta, they have promoted and encouraged it by refusing to delete any of the difrawi_difrawy ratings and posts and by awarding difrawi_difrawy the "Scam Buster" Award for 2009.

60.    difrawi_difrawy has made over 10,000 defamatory posts and ratings directed entirely and exclusively at the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.  See Exhibit "H".

61.   At all times material hereto difrawi_difrawy posted the false and defamatory information with malice and knowledge and/or reckless disregard for its falsity.

62.   difrawi_difrawy intended that the false and defamatory postings and ratings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

63.   difrawi_difrawy's postings and ratings on the Website are accessible in Florida and have been accessed in Florida.

64.   The Doe Defendants have posted defamatory information regarding the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.

65.   At all times material hereto the Doe Defendants posted the false and defamatory information with knowledge and/or reckless disregard for its falsity.

66.   The Doe Defendants intended that the false and defamatory postings and ratings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

67.   The Doe Defendants' postings to the Website are accessible in Florida and have been accessed in Florida.

68.   The defamatory statements made by g7w and the Doe Defendants are knowingly false, or are made with reckless disregard of their falseness, and are designed to harm Plaintiffs' and Associates' business and personal reputations.

69.   Upon information and belief, g7w and the Doe Defendants conspired to post and publish false and defamatory information about Plaintiffs and Associates in an attempt to discredit Plaintiffs and Associates and interfere with their personal and business operations. See Exhibit "I".

70.     Upon information and belief, the Defendants collectively conspired to post and publish false and. defamatory information about Plaintiffs and Associates in an attempt to discredit Plaintiffs and Associates and interfere with their personal and business operations. See Exhibit "J".

71.     At all times material to this cause of action, the Defendants knew that Plaintiffs and Associates conducted business in the United States.

72.     At all times material to this cause of action, the Defendants knew, or should have known, that Plaintiffs CNI, TSI, ICI, and PAI, and Associates were authorized to do business in the State of Florida and maintained their offices in Orlando, Florida.

73.     At all times material to this cause of action, the Defendants knew that Plaintiffs and Associates were associated persons and entities.

74.     The Defendants directed their defamatory statements toward recipients in the United States and posted the information knowing and desiring that it would cause harm and damages to Plaintiffs and Associates in the United States, the State of Florida, and elsewhere.

75.     The Website as well as the posts and ratings made by the Defendants are accessible in Florida and were accessed in Florida.

76.     The false and defamatory statements and ratings authored and posted by the Defendants on the Website subject Plaintiffs and Associates to distrust, ridicule, contempt, and disgrace. These defamatory statements and ratings also impute conduct, characteristics, and conditions incompatible with the proper exercise of Plaintiffs' and Associates' lawful businesses.

77.     The Defendants do not have substantiation for their claims.

78.     The Defendants do not couch their statements as opinion or otherwise qualify the statements.

79.     Plaintiffs have notified the WOT Defendants on more than one occasion that the statements are false, defamatory, and injurious.

80.     The Defendants have continued to post defamatory statements after Plaintiffs notified the WOT Defendants that the statements are false, defamatory, and injurious.

81.     By continuing to post the defamatory statements and using their self-serving algorithm the WOT Defendants have maliciously and intentionally defamed Plaintiffs and Associates.

82.     The Defendants, via the Website, have made defamatory statements that are accessible in Florida and were accessed in Florida.

83.     On September 3, 2010, Plaintiffs sent Perälä, as CEO of WOT Services and AII, the notice letter required by Florida Statutes, §770.01.   The letter was delivered to WOT Services/AII and signed for on September 6, 2010 at 1:34 PM.   A copy of the letter and the receipt of delivery are attached as Exhibit "K".

## COUNT I
### DEFAMATION PER QUOD

84.     Plaintiffs reallege Paragraphs 1~ 83 as if fully restated herein.

85.     Defendants have made false, defamatory and injurious statements about Plaintiffs and Associates.

86.     Defendants' false and defamatory statements were made with knowledge of their falsity or reckless disregard of the truth or falsity of the statements.

87.     Defendants published false statements to third parties via the Internet.

88.     Defendants' publication of the false, defamatory and injurious statements was not subject to any available publication or legal privilege.

89.    Defendants' false, defamatory and injurious statements exposed Plaintiffs and Associates to distrust, hatred, contempt, ridicule and embarrassment.

90.    Defendants' false, defamatory and injurious statements harm the reputation of Plaintiffs and Associates so as to lower Plaintiffs and Associates in the estimation of Plaintiffs' and Associates' employees and business associates and interfere with the relationship between Plaintiffs and Associates and their employees and business associates.

91.    Defendants directed the false and defamatory statements to Plaintiffs and Associates in the State of Florida with the specific intent and knowledge that the statements would damage Plaintiffs and Associates in the State of Florida.

92.    Defendants made the false and defamatory statements with actual malice toward Plaintiffs and Associates with the specific intent to damage and harm Plaintiffs and Associates.

93.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

94.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Associates have suffered actual damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT II
## DEFAMATION PER SE

95.    Plaintiffs reallege Paragraphs 1–83 as if fully restated herein.

96.    Defendants have made false statements about Plaintiffs and Associates which are *per se* injurious as they accuse the Plaintiffs and Associates of perpetrating ongoing scams and illicit business dealings.

97.   ·The nature ·of the false statements is such that malice and actual damage is presumed.

98.   Defendants published false statements to third parties via the Internet.

99.   Defendants' publication of the false, defamatory and injurious statements was not subject to any available publication or legal privilege.

100.   Defendants' false, defamatory and injurious statements exposed Plaintiffs to distrust, hatred, contempt, ridicule and embarrassment.

101.   Defendants' false, defamatory and injurious statements harm the reputation of Plaintiffs and Associates so as to lower Plaintiffs and Associates in the estimation of Plaintiffs' and Associates' employees and business associates and interfere with the relationship between Plaintiffs and Associates and their employees and business associates.

102.   Defendants' false and defamatory statements were made with knowledge of their falsity or reckless disregard of the truth or falsity of the statements.

103.   Defendants directed the false and defamatory statements to Plaintiffs and Associates in the State of Florida with the specific intent and knowledge that the statements would damage Plaintiffs and Associates in the State of Florida.

104.   Defendants made the false and defamatory statements with actual malice toward Plaintiffs and Associates with the specific intent to damage and harm Plaintiffs and Associates.

105.   Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

106.   Plaintiffs and Associates have suffered damages in the State of Florida as a result of Defendants' actions.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

**COUNT III**
**INTERFERENCE WITH BUSINESS RELATIONSHIP**

107.     Plaintiffs reallege Paragraphs 1–83 as if fully restated herein.

108.     Plaintiffs and Associates have established business relationships with industry professionals, consumers, and advertisers through their various businesses.

109.     Defendants, at all times material hereto, knew of the existing business relationships between Plaintiffs and Associates and their advertisers, business associates, employees, independent contractors and Internet consumers.

110.     Defendants intentionally interfered with the business relationships by posting false and defamatory statements for the express purpose of destroying Plaintiffs' and Associates' established and future business relationships.

111.     Defendants' interference with Plaintiffs' and Associates' business relationships was without legal or other justification.

112.     Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

113.     As a result of Defendants' intentional and unjustified interference, Plaintiffs and Associates have suffered damages to their existing business relationships and continue to suffer damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT IV
## INJURIOUS FALSEHOOD- TRADE LIBEL

114.   Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

115.   Defendants made and published defamatory statements about Plaintiffs' and Associates' businesses and business practices which are untrue and disparaging as to the nature and manner in which Plaintiffs and Associates conduct business.

116.   Defendants published false statements to third parties through posting the statements via the Internet.

117.   Defendants knew that the false statements were likely to influence prospective users of Plaintiffs' and Associates' businesses to avoid Plaintiffs' and Associates' businesses.

118.   The false statements materially and substantially induced third parties not to utilize Plaintiffs' and Associates' business and to not contract with Plaintiffs and Associates.

119.   Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

120.   As a result of Defendants' publishing the false statements to third parties, employees, and business associates, Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT V
## CIVIL CONSPIRACY

121.   Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

122.   At all times material hereto Defendants agreed to engage in actionable conduct against Plaintiffs and Associates.

123.    Defendants agreed, combined, and conspired with one another to post on the Internet false and defamatory statements regarding Plaintiffs and Associates.

124.    Defendants agreed, combined, and conspired to conceal the identities of the Doe Defendants with the intent to cause Plaintiffs and Associates serious economic harm as well as harm to their respective business reputations

125.    Defendants agreed, combined, and conspired to ruin the reputation of Plaintiffs and Associates by posting false negative information on public websites for others to find and use to attack Plaintiffs and Associates.

126.    Defendants agreed, combined, and conspired to encourage individuals to file unfounded complaints against Plaintiffs and Associates with the Better Business Bureau, other Internet websites, and with law enforcement agencies falsely claiming they were victims of fraudulent business practices.

127.    Defendants agreed, combined, and conspired to use the unfounded complaints to increase the number of complaints against Plaintiff and Associates to use as evidence of wrong-doing to generate more unfounded complaints.

128.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

129.    As a direct proximate result of the Defendants' actions, Plaintiffs and Associates have suffered damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

### COUNT VI
### FRAUDULENT MISREPRESENTATION

130.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

131.   At all times material hereto, Defendants knowingly made false statements concerning the operation of Plaintiffs' and Associates' businesses with the intent that persons using the Website would rely on these false representations, would not conduct business with or become employed by Plaintiffs and Associates and would thereby cause injury to Plaintiffs and Associates.

132.   Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

133.   As a result of Defendants' fraudulent misrepresentations, Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT VII
## MISLEADING ADVERTISING

134.   Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

135.   At all times material hereto Defendants knew that statements disseminated and promoted on the Website were false and misleading, but continued to disseminate and promote the false and misleading statements with the intent of inducing the public to utilize the Website.

136.   The WOT Defendants claim to objectively post both positive and negative information on various websites; however, the mechanism by which they post information is subjective and not objective.

137.   The public has relied and continues to rely on the information provided on the Website believing it is objective.

138. The WOT Defendants knew that the false and misleading statements were likely to influence prospective users of Plaintiffs' and Associates' businesses to avoid Plaintiffs and Associates' businesses.

139. The false statements materially and substantially induced the public to not utilize Plaintiffs' and Associates' business and to not contract with Plaintiffs and Associates.

140. Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

141. As a result of the WOT Defendants' misleading advertisements Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT VIII
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

142. Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

143. The Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat. §501.201 et seq.* ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce.

144. At all times material hereto the WOT Defendants advertised, solicited, provided, offered, or distributed goods, services and other things of value and thereby is engaged in trade or commerce under the FDUTPA.

145. Defendants' practices described in detail in the aforementioned allegations above are unfair and deceptive.

146.   Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

147. ·  As a result of Defendants' unfair and deceptive practices, Plaintiffs and Associates have been damaged.   In addition to damages, Plaintiffs have also incurred litigation costs, attorney's fees, and expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages on account of their deceptive and unfair actions, costs, prejudgment interest, attorney's fees under *Fla. Stat. §501.2105* and such other relief as the Court deems just and proper, including injunctive relief should the court find that there is no adequate remedy at law.

## COUNT IX
## INJUNCTIVE RELIEF

148.   This is an action in equity for injunctive relief.

149.   Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

150.   Based on the facts as set forth herein, Plaintiffs have a substantial likelihood of success on the merits of the asserted causes of action.

151.·  Plaintiffs do not have an adequate remedy at law.

152.   Monetary damages are inadequate to protect the present and future business interests and reputation of the Plaintiffs and Associates.

153.   Injunctive relief would provide a benefit to, and is in the interests of, the public, as it would prevent defamation, libel and other actionable conduct through the use of the Internet.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court grant the following relief:

A.     Award damages, both compensatory and punitive, against Defendants;

B.    Grant a permanent injunction against Defendants enjoining Defendants from hosting, posting, or in any manner publishing or disseminating, whether in their legal identities or under any aliases, whether now created or created in the future, any defamatory or injurious information relating to Plaintiffs or Associates;

C.    Order Defendants to remove from the Internet and any other media, of any kind or nature, all actionable statements posted or published against Plaintiffs and Associates;

D.    Award Plaintiffs fees and costs incurred in prosecution of these actions; and

E.    Award Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted this 4th day of October, 2010.

Myra P. Nicholson, Esq.
Florida Bar No.: 0710024
Myra Nicholson, P.A.
1743 Park Center Drive
Orlando, Florida 32825
Phone:  407-803-4729
Facsimile:  407-803-5861
Email:  myra@mnicholson-law.com

Attorney for Plaintiffs