# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CAREER NETWORK, INC., et al,**

                 **Plaintiffs,**          **Case No. 6:10-cv-01826-GAP-KRS**

    **v.**

**WOT SERVICES, LTD, et al.,**

                 **Defendants.**

---

## DEFENDANTS WOT SERVICES, LTD AND AGAINST INTUITION, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND 12(B)(3) <u>AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

I.    Introduction...........................................................................................................1

II.   Factual Background ...........................................................................................2

III.  Legal Argument ...............................................................................................5

   A.    Standard for a Motion to Dismiss for Failure to State a Claim ............................ 5

   B.    All of Plaintiffs' Claims Are Barred by  Section 230 of the
         Communication Decency Act ................................................................... 6

         1.    Interactive Computer Services Are Immune from  Claims Based on Third-
               Party Content ........................................................................................ 6

         2.    WOT Defendants Are Not Information Content Providers ...................... 8

               a.    WOT Defendants Are Not Information Providers Based on
                     Allegedly Designing the Website Algorithm.................................10

               b.    WOT Defendants Do Not Lose Their Immunity for
                     Allegedly Encouraging User Submissions....................................15

               c.    There Can Be No Liability for Any Alleged Failure to
                     Remove Information on the Website .............................................16

   C.    Plaintiffs' Claims Are Otherwise Deficient......................................... 17

         1.    Plaintiffs Have Failed to Allege the  Required Elements of Tortious
               Interference ............................................................................. 17

         2.    Plaintiffs Have Not Made Non-Conclusory Allegations  that WOT
               Defendants Participated in Any Conspiracy ............................................. 18

         3.    Plaintiffs' Fraud and Misleading Advertising Claims  Must Be Dismissed
               Because Plaintiffs Did Not Rely Upon Any Misleading Advertisement or
               Misrepresentation......................................................................... 20

         4.    Plaintiffs' Unfair Trade Practices Claim Must Be Dismissed ................. 21

         5.    Injunctive Relief Is Not a Separate Cause of Action ................................ 22

     D.      Plaintiffs Are Required to Bring This Action in Finland...................................... 23

IV.     Conclusion ....................................................................................................................25

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and based on the accompanying memorandum of law, Defendants WOT Services, Ltd. ("WOT Services") and Against Intuition, Inc.  ("AII") (collectively, "WOT Defendants"), move to dismiss the Complaint of Plaintiffs Career Network, Inc., Three Stars Media, Inc., Three Stars, Inc. d/b/a Threestars of Central Florida, Inc., Internetcompany, Inc. d/b/a Internet-Company of Central Florida, Inc., Medialogic, Inc., Power Applications, Inc., MonkeyJar, Inc., and Buzzgrub, Inc. (collectively, "Plaintiffs") in its entirety for failure to state a claim upon which relief can be granted.  Defendants also move for the case to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), because a forum selection clause requires that this dispute be litigated in Finland.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I.      INTRODUCTION

The WOT Defendants operate a Web of Trust website, www.mywot.com, which lets a global community of millions of trustworthy third-party Internet users share information about websites based on their own knowledge and personal experiences.  The information provided by these third-party users and other third-party trusted sources, such as website black lists, are run through an algorithm which weighs the third-party input and provides a website safety rating.

In their Complaint, Plaintiffs advance nine theories of liability, all of which seek to hold WOT Defendants liable for statements made by third-party users on WOT Defendants' website and the ratings that are generated from those third-party statements.   Specifically, Plaintiffs allege that certain third-party users rated Plaintiffs' websites negatively and made comments

expressing their belief that, among other things, Plaintiffs' businesses operate scams that improperly obtain and sell personal information from individuals who use Plaintiffs' websites.

All of Plaintiff's claims are barred by the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, which preempts attempts to hold website operators, like WOT Defendants, from liability for content posted by third-party users. Congress enacted Section 230 of the CDA to give web site operators immunity from tort claims for third-party content because such liability would have a chilling effect on speech and stifle the development of valuable resources, such as the WOT website. The WOT Defendants fall squarely within the protection of this statute and *all* of Plaintiffs' claims against WOT Defendants should be dismissed.

Aside from the fact that all of Plaintiffs' claims are barred by the CDA, there are numerous other deficiencies in Plaintiffs' complaint that require dismissal of each claim. Plaintiffs' entire Complaint is based on vague and conclusory allegations. Plaintiffs have also fail to allege essential elements of their tortious interference, conspiracy, fraud, misleading advertising, and unfair trade practices claims.

Additionally, Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(3) because a forum-selection clause in the WOT Defendants' Terms of Service requires that this dispute be litigated in Finland where the WOT Defendants, Finnish companies, operate the website.

## II.    FACTUAL BACKGROUND

As alleged in the Complaint,[1] Defendants WOT Services and AII are companies located in Finland, which operate a website, www.mywot.com (the "WOT website"). Compl. ¶¶ 9, 21.

---

[1] For the purposes of this motion to dismiss, Plaintiffs' non-conclusory, factual allegations are accepted as true. Defendants do not hereby deny or admit any of the allegations in the

The WOT website is "a 'community-based safe surfing tool that uses an intuitive traffic-light rating system to help Web users stay safe as they search, surf and shop online.'"  Compl. ¶ 28. The WOT website hosts a "forum", which allows its third-party members to post comments and discuss website ratings, security and online safety.  Compl. ¶¶ 51, 60, Ex. H & I.  All of the alleged defamatory postings are based on these third-party forum comments.  The WOT website also includes a website rating system developed by WOT Defendants, which calculates a rating based on input entered by third-party members within the WOT community.  Compl. ¶¶ 31, 32, 36, 37, 38.  Plaintiffs have also named as defendants various individuals and unidentified "Doe" defendants, including third-party members of the WOT community.  To date, however, none of these defendants has been served.[2]

Plaintiffs are seven companies that operate internet marketing businesses, which Plaintiffs contend include job posting boards and shopping communities.  Compl. ¶¶ 2-8, 20. Plaintiffs are affiliated with an individual named Ayman Difrawi.  Compl. ¶ 57.

Plaintiffs allege that third-party users of the WOT website posted defamatory comments about their businesses and websites.  Compl. ¶¶ 51, 60, 64.  These comments primarily concern reports by third-party users that Plaintiffs' websites are "phishing" scams, whereby the websites attempt to acquire sensitive personal information by pretending to be a trustworthy entity.  *See* Compl. Ex. I.  Third-party users has commented that Plaintiffs solicited information by

---

Complaint.  For clarification, although not alleged in the Complaint, AII subsequently changed its name to WOT Services, but they are essentially the same company.

[2] Serious doubts exist as to whether these individuals would be subject to personal jurisdiction in this district.  *See, e.g.*, *Vision Media TV Group, LLC v. Forte*, 2010 U.S. Dist. LEXIS 72318 (S.D. Fla. July 19, 2010).

purporting to offer career opportunities, which do not exist or existed only remotely, to induce job seekers to disclose personal information, which Plaintiffs sold to others.  *Id.*

Plaintiffs have <u>not</u> identified a single allegedly defamatory statement authored by anyone employed by or acting under the authority of WOT Defendants.  Although the Complaint alleges that WOT employees have, in the past, posted on the WOT forum and blog, Compl. ¶¶ 39, 41, there is not a single allegation in the Complaint or in any of the exhibits thereto suggesting that any WOT employee made a defamatory post about any of the Plaintiffs.  Similarly, Plaintiffs make the vague allegation that the WOT Defendants somehow manipulate the rating algorithm, Compl. ¶ 35, but offer only conclusory and implausible allegations on this point.

The third-party statements against Plaintiffs' business practices are not confined to the WOT website as reflected by the numerous defamation claims Mr. Difrawi and his companies have filed.  *See, e.g.*, *Difrawi v. Henderson*, No. 6:07-cv-1854-Orl-22KRS (M.D. Fla.); *Difrawi v. Garga-Richardson*, No. 6:08-cv-00904-GAP-GJK (M.D. Fla.); *Internet Solutions v. Garga-Richardson*, No. BC394102 (Cal. Sup. Ct. L.A. Cty.).  The repeated filing of these unsuccessful cases raises the specter that these cases are brought only for the purposes of harassing the defendants.  Most recently, in the *Henderson* case, Judge Conway *sua sponte* assessed costs against Mr. Difrawi and Plaintiffs' counsel for deliberately engaging in bad faith conduct on the eve of trial only to dismiss the case, resulting in a waste of time and judicial resources.  Apr. 26, 2010 Order, Doc. No. 136, at 6-8.[3]

---

[3] Although, the Defendants had identified numerous other bad acts, Order at 3-4, the Court declined to award additional Rule 11 sanctions because the Defendants waited until after the case was dismissed to file their motion and failed to comply with Rule 11's safe harbor provisions.

Plaintiffs filed this action against Defendants in Florida state court.  WOT Defendants filed a timely notice of removal to this district on December 7, 2010.  WOT Defendants now seek to dismiss the Complaint in its entirety for the reasons set forth herein.

## III.   LEGAL ARGUMENT

### A.   Standard for a Motion to Dismiss for Failure to State a Claim

In order to survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In ruling on a motion to dismiss, the court may consider the allegations in the complaint, exhibits thereto, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

Although the court must accept the factual assertions in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949  (2009).  "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).  A plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*; *see Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1261 (11th Cir. 2009).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled

facts "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully and requires a court to consider the range of possible interpretations of the defendant's alleged conduct. *Id.* at 1950-51. *Id.* at 1950-51. If the court finds that "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.*

A complaint should be dismissed with prejudice when any attempt to amend the complaint would be futile. *See, e.g.*, *Keeler v. Fla. Dep't of Health*, 682 F. Supp. 2d 1302, 1312 (M.D. Fla. 2009) (dismissing complaint with prejudice because any amendment would be futile where defendant was immune from suit), *adopted*, 682 F. Supp. 2d 1302 (M.D. Fla. 2010).

### B.   All of Plaintiffs' Claims Are Barred by Section 230 of the Communications Decency Act

#### 1.   Interactive Computer Services Are Immune from Claims Based on Third-Party Content

Plaintiffs' claims against WOT Defendants for the allegedly defamatory postings and ratings of its third-party users are barred because WOT Defendants are statutorily immune from suit for such claims. Specifically, Section 230 of the Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230 (c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230 (e)(3).

As the Eleventh Circuit has observed, "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service

providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).[4]  An overwhelming majority of the Courts of Appeal have reached this conclusion.  *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 790-92 (8th Cir. 2010); *Nemet Chevrolet, Ltd. v. Consumersaffairs.com*, 591 F.3d 250, 254-56 (4th Cir. 2009); *Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007); *Green v. America Online*, 318 F.3d 465, 470-71 (3d Cir. 2003); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000); *Zeran*, 129 F.3d at 332-34. Numerous state courts, including the Florida Supreme Court, have reached a similar conclusion. *See, e.g.*, *Doe v. America Online*, 783 So. 2d 1010, 1013-18 (Fla. 2001); *Donato v. Moldow*, 865 A.2d 711 (N.J. 2005); *Gentry v. eBay*, 99 Cal. App. 4th 816 (2002).

Congress enacted Section 230 because it "recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium."  *Zeran*, 129 F.3d at 330. The statutory findings recognize that the Internet offered "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity," that has flourished with minimal regulation.  47 U.S.C. § 230(a)(3).  As such,

---

[4] In *Almeida*, the Eleventh Circuit ultimately refrained from ruling on the application of CDA immunity under the facts of that case since it ruled that the plaintiff's claim, based on a right of publicity claim based on Fla. Stat. § 540.08, could otherwise not withstand a motion to dismiss. 456 F.3d at 1324.  The only other instance in which the Eleventh Circuit had the opportunity to discuss Section 230 was in the unpublished opinion in *Whitney Information Network v. Xcentric Venture*, 199 Fed. Appx. 738 (11th Cir. 2006) (per curiam), where it discussed CDA immunity while analyzing personal jurisdiction over a website operator where there were conflicting affidavits as to extent to which the website provided content.  Ultimately, the district court found the defendants in that case immune under the Section 230.  *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, at *27-46 (M.D. Fla. Feb. 15, 2008).

"Congress made a policy choice, . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran*, 129 F.3d at 330-31.  Given the considerable number of users that an interactive computer service has, "[t]he amount of information communicated via interactive computer services is therefore staggering."  *Id.* at 331.  "Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted."  *Id.*  Thus, "Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect."  *Id.*

Because of the "the 'obvious chilling effect' the 'specter of tort liability' would otherwise pose to interactive computer service providers given the 'prolific' nature of the internet . . . . Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process."  *Nemet Chevrolet*, 591 F.3d at 254 (quoting *Zeran*, 129 F.3d at 331).   It is appropriate "to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" *Nemet Chevrolet*, 591 F.3d at 255 (citations omitted).

### 2.    WOT Defendants Are Not Information Content Providers

WOT Defendants are entitled to immunity because they are interactive computer services not the providers of the content at issue.  The critical question to resolve in determining whether a defendant is immune under Section 230 is whether the defendant is an "interactive computer

service" or an "information content provider."[5]   In light of the policy considerations underlying

Section 230, "reviewing courts have treated § 230(c) immunity as quite robust, adopting a

relatively expansive definition of 'interactive computer service' and a relatively restrictive

definition of 'information content provider.'"  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d

1119, 1132 (9th Cir. 2003) (footnotes omitted).

Plaintiffs' defamation allegations primarily concern the posting of allegedly defamatory

statements on forums on the WOT website by third-party users of the website. *See, e.g.*, Compl.

¶¶ 51, 60, 64, 68 & the exhibits thereto.  There is no allegation that WOT Services or AII

authored, edited, or in any way altered the substance of any of these allegedly defamatory posts.

Although, Plaintiffs allege that certain WOT employees have at times posted on the WOT forum,

Compl. ¶¶ 41-45, there is <u>no</u> allegation that any WOT employee made any defamatory post

*concerning Plaintiffs*.  Thus, as to these allegedly defamatory posts posted by third parties users,

there can be no doubt that WOT Defendants are interactive computer services immune from suit

under the CDA.  *See, e.g.*, *Lycos, Inc.*, 478 F.3d at 419-21; *Green*, 318 F.3d at  470-71.

Recognizing that their claims are prohibited by federal law, Plaintiffs attempt to plead

around the Section 230 bar in order to try and circumvent WOT Defendants' immunity.  In the

wake of the Supreme Court's decisions in *Twombly* and *Iqbal*, however, courts have rejected

efforts by plaintiffs to evade Section 230's protections through conclusory allegations.  *See, e.g.*,

---

[5] The statute defines an "interactive computer service" as "any information service, system, or
access software provider that provides or enables computer access by multiple users to a
computer server, including specifically a service or system that provides access to the Internet
and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.
§ 230(f)(2). An information "information content provider"  is defined as "any person or entity
that is responsible, in whole or in part, for the creation or development of information provided
through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

*Nemet Chevrolet*, 591 F.3d at 256 (dismissing defamation claim where plaintiff's allegations allowed the court "to infer no more than 'the mere possibility' that [the defendant] was responsible for the creation or development of the allegedly defamatory content at issue"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (dismissing claim where "Plaintiff has not come close to substantiating the 'labels and conclusions' by which she attempts to evade the reach of the CDA"). Thus, Plaintiffs' naked legal conclusion that WOT Defendants are "information content providers" under the CDA, Compl. ¶ 33, is not entitled to any credence. As discussed below, each of Plaintiffs additional vague attempts to plead around WOT Defendants' statutorily conferred immunity are similarly ineffective.

### a. WOT Defendants Are Not Information Providers Based on Allegedly Designing the Website Algorithm

First, Plaintiffs assert that WOT Defendants are not immune because they developed and control the algorithm that calculates – based solely on third-party user input – the rating for websites. *See, e.g.*, Compl. ¶¶ 31, 32. As a threshold matter, the Complaint is devoid of any plausible factual allegations as to how WOT Defendants allegedly manipulated the algorithm in any manner that defamed Plaintiffs. Indeed, the Complaint does not even specifically allege how any of the "ratings", as opposed to the substantive posts, are defamatory.

Most significantly, however, allegations that a website owner could be liable as an information content provider because it developed an algorithm or rating system which used third-party content has been rejected by the court. *Goddard v. Google, Inc.*, 640 F. Supp. 2d at 1197 (dismissing complaint against web search engine that developed algorithm that allegedly encouraged fraudulent advertisements to be posted on its website); *Gentry v. eBay*, 99 Cal. App. 4th 816 (2002) (finding internet auction site immune from claim involving the customer rating

system it had developed).  Likewise, courts have routinely rejected allegations that a website

owner could be held liable as an information content provider because it developed the website

at issue.  *See, e.g.*, *Carafano*, 339 F.3d at 1122 (holding that dating website was not liable in

connection with detailed user questionnaire it had developed); *see also Nemet Chevrolet*, 591

F.3d at 257-58 (rejecting plaintiff's argument that a website allowing consumers to comment on

the quality of businesses was an information content provider because it was responsible for the

"structure and design of the website"); *Lycos*, 478 F.3d at 419-20  (ruling that a website was not

an information content provider solely because features of the "site make it possible for

individuals to spread misinformation more credibly, by doing so under multiple screen names

and in a context that is associated with objective content"); *Prickett v. infoUSA, Inc*., 561 F.

Supp. 2d 646, 651 (E.D. Tex. 2006) (rejecting contention that defendant was an information

content provider because users were "prompted to select subcategories through the Defendant's

database gathering system").  Third party postings "do not cease to be 'information provided by

another information content provider' merely because the 'construct and operation' of the web

site might have some influence on the content of the postings." *Lycos*, 478 F.3d at 419-20.

Several of these cases are particularly illustrative as to why Plaintiffs are unable to

convert WOT Defendants into information content providers based on their alleged involvement

in designing the a rating algorithm based on third-party user content.  For example, in *Carafano*,

the Ninth Circuit relied, in part, upon a California state case, *Gentry v. eBay*, 99 Cal. App. 4th

816 (2002), which involved a customer rating system utilized by the internet action site, eBay,

which shares some similarity with the rating system on the WOT website.  The plaintiffs alleged

that eBay was an information content provider because of information purportedly developed by

eBay "consisting of a color-coded star symbol, a Power Sellers endorsement, and a Feedback Forum," which they described as follows:

> The Feedback Forum purportedly allows dealers and consumers to rate a sales transaction with a compliment (a 'Positive Feedback'), a criticism (a 'Negative Feedback'), or other comments (a 'Neutral Feedback'). eBay has advertised that, 'A positive eBay rating is worth its weight in gold.' A dealer or consumer who achieves a designated level of Positive Feedback is awarded a star symbol display next to the user name, which is color coded to indicate the amount of Positive Feedback received by the user. [P] . . . In addition to the Feedback Forum, eBay designed a 'Power Sellers' endorsement, which purportedly is an award given to select eBay dealers based on the volume of sales and Positive Feedback ratings.

*Id.* at 834.  The court concluded that "[n]one of these allegations place eBay outside the immunity for service providers" because the Feedback Forum was comprised of negative or positive information provided by third parties and  "the star symbol and 'Power Sellers' designation is simply a representation of the amount of such positive information received by other users of eBay's Web site."  *Id.*  Similar to Plaintiffs' allegations in this case, the plaintiffs in that case alleged "that the information is false or misleading because it has been manipulated by the individual defendants or other co-conspiring parties."  *Id.*  The court rejected the plaintiffs' contention that these allegations altered eBay's status because eBay was allegedly "simply compiling false and/or misleading content created by" others, and the court did "not see such activities transforming eBay into an information content provider with respect to the representations targeted by appellants as it did not create or develop the underlying misinformation."  *Id.*

Other courts have similarly held that a parties, such as the WOT Defendants, cannot be considered information content providers based on their alleged involvement in designing a website which uses third-party user content.  For example, in *Carafano* the defendant internet

dating website was alleged to be an information content provider because as part of its matchmaking service it required users to complete a detailed questionnaire "asking 62 detailed questions and providing a menu or 'pre-prepared responses.'"  339 F.3d at 1124-25.  The Ninth Circuit held, however, that the website was not an information content provider because it "still lacks responsibility for the 'underlying misinformation.'"  In so ruling, the Ninth Circuit noted that the website's "decision to structure the information provided by users" allowed that company to offer additional features that it would not be able to offer to the same degree without creating a standardized form to collect user input, and that allowing this "promotes the expressed Congressional policy 'to promote the continued development of the Internet and other interactive computer services.'"  *Id.* at 1125 (quoting 47 U.S.C. § 230(b)(1)).

More recently, in *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009), a plaintiff sued Google for allegedly furthering a scheme for fraudulent web-based advertisements for mobile subscription services.  In attempting to overcome the defendant's argument that it was immune from liability under the CDA for advertisements on its website prepared by third-parties, the plaintiff attempted to identify "several mechanisms by which Google allegedly contributes to the illegality of the offending advertisements."  *Id.* at 1197.  Specifically, the plaintiff alleged that a "Keyword Tool," which "Plaintiff describe[d] as a 'suggestion tool' employing an algorithm to suggest specific keywords to advertisers" contributed to the illegal content of the advertisements.  The court rejected this argument ruling that even if assuming that Google was aware of the issues of fraud, "Plaintiff's argument that the Keyword Tool 'material contributes' to the alleged illegality does not establish developer liability."  *Id.* The court explained that "even if a particular tool 'facilitates[s] the expression of information, it generally will be considered

13

'neutral' so as long as users ultimately determine what content to post, such that the tool merely provides 'a framework that could be utilized for proper or improper purposes.'" *Id.* (citations omitted).[6]

The ratings system on the WOT website is a neutral framework through which users ultimately determine what content to post, which, for the purposes of CDA immunity, is indistinguishable from the detailed website questionnaire in *Carafano*, the customer rating system in *Gentry*, or the algorithm in *Goddard*.  Plaintiffs have offered no non-conclusory allegations as to how the WOT Defendants' development of the algorithm for the ratings system contributes to the illegality alleged in the Complaint and in fact, they cannot do so.  As the Ninth Circuit recognized in *Carafano*, the benefits and functionality of a website, like the WOT website, embody the purpose of Section 230 in promoting "the continued development of the Internet and other interactive computer services.'" 339 F.3d at 1125 (quoting 47 U.S.C. § 230(b)(1)). Plaintiffs' attempts to evade the CDA bar and strip WOT Defendants of their immunity based on their development of the WOT website and algorithms used therein conflicts with that purpose and must not be permitted.

---

[6] The court in *Goddard* thus distinguished the Ninth Circuit's opinion in *Fair Housing Council of San Fernando v. v. Roommates.com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008) (en banc), where a website that required users to input protected characteristics and preferences that violated housing discrimination laws was found not to be immune from suit under housing discrimination laws.  For the reasons expressed in *Goddard*, this "narrow exception" recognized for website liability in *Roommates.com* is not applicable here.  The WOT website does not "require" that users input any defamatory statements.  *See Goddard*, 640 F. Supp. 2d at 1197-98.

**b.     WOT Defendants Do Not Lose Their Immunity for Allegedly Encouraging User Submissions or Choosing Sources**

Plaintiffs also assert that WOT Defendants somehow encouraged defamatory posts. *See* Compl. ¶¶ 35, 39, 46, 59. These unsubstantiated allegations fail to convert WOT Defendants into information content providers as to the third-party content at issue.

To the extent that Plaintiffs suggest that WOT Defendants encouraged defamatory posts or abuse of the ratings system, Plaintiffs have offered nothing but naked assertions devoid of any further factual enhancement, which the Court need not accept under *Iqbal* and *Twombly*. For example, in *Goddard*, in an attempt to evade the CDA, the plaintiff alleged "that Google 'not only encourages illegal conduct, [but] collaborates in the development of the illegal conduct and, effectively, requires its advertisers to engage in it.'" 640 F. Supp. 2d at 1196. In rejecting these allegations, the court explained that these allegations "are mere 'labels and conclusions' amounting to a 'formulaic recitation of the elements' of CDA developer liability, and as such, they 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Nemet Chevrolet*, 591 F.3d at 257-58 (dismissing complaint with threadbare allegations that website sought out consumer complaints for posting and steered them so as to attract the attention of class action lawyers). Likewise, in this case, Plaintiffs' unsubstantiated assertion that the WOT Defendants somehow encouraged defamatory posts is insufficient to deprive the WOT Defendants of their statutory immunity.

Additionally, to the extent Plaintiffs assert that WOT Defendants chose any of the sources that have contributed to the WOT website, *see* Compl. ¶ 36, general acts of soliciting contributions, selecting content, or even paying contributors is not enough to turn a website into an information content provider under the CDA. *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1031

15

(9th Cir. 2003) (finding defendant immune where it selected and made minor alterations to the content at issue); *Blumenthal v. Drudge*, 992 F. Supp. 44, 51-52 (D.D.C. 1998) (ruling that defendant who paid a third-party $3,000 a month to prepare content was immune); *Donato v. Moldow*, 865 A.2d 711, 719-22 (N.J. 2005) (holding that website operator was immune even though plaintiffs alleged defendant allegedly "'actively participated in selective editing, deletion and re-writing of anonymously posted messages,'" and "controls the 'content of the discussion,'" "by posting messages of his own, commenting favorably or unfavorably on messages posted by others, selectively deleting some messages while allowing others to remain, and selectively banning users whose messages he deems disruptive to the forum").

Accordingly, Plaintiffs are not able to strip WOT Defendants of their immunity through their deficient allegations that they somehow encouraged the allegedly defamatory posting or chose any of the sources.

### c. There Can Be No Liability for Any Alleged Failure to Remove Information on the Website

Finally, Plaintiffs assert that WOT Defendants failed to take action to remove the defamatory posts after Plaintiffs allegedly provided notice that the posts were defamatory. *See* Compl. ¶¶ 35, 59, 79-80.  It is well settled, however, that such allegations fall within the broad immunity conferred by Section 230.  *See, e.g.*, *Lycos*, 478 F.3d at 420 (holding that "Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content."); *Zeran*, 129 F.3d at 331-33 (holding plaintiffs' claim that provider failed to remove defamatory materials after notice of such materials was barred by Section 230); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Deciding whether or not to remove content

or deciding when to remove content falls squarely within Ask.com's exercise of a publisher's traditional role and therefore subject to the CDA's broad immunity.").

In sum, none of Plaintiffs attempts to plead around WOT Defendants' immunity succeed. Plaintiffs have offered nothing but unsupported conclusions and legally deficient theories that have already been rejected by numerous courts.  The explicit text and strong Congressional policy embodied in Section 230 compels the conclusion that WOT Defendants are immune from Plaintiffs' claims, which must be dismissed in their entirety with prejudice.

### C.     Assuming Arguendo that the WOT Defendants Were Not Immune Under the CDA, Each of Plaintiffs' Claims Should Dismissed

Aside from the fact that all of Plaintiffs' claims are barred by Section 230 immunity, Plaintiffs' Complaint must also be dismissed in its entirety because Plaintiffs' claims are inadequately pled and fail to state a claim upon which relief could be granted.

### 1.     Plaintiffs Have Failed to Allege the Required Elements of Tortious Interference

The tortious interference claim must be dismissed because Plaintiffs fail to adequately allege an actual business relationship which WOT Defendants knew of and intentionally interfered.  For a tortious interference claim under Florida law, Plaintiffs must plead: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the interference."  *Tardif v. People for the Ethical Treatment of Animals*, 2010 U.S. Dist. LEXIS 103126, at *24 (M.D. Fla. Sept. 29, 2010) (citing *Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009)).

Plaintiffs only vaguely allege that they had business relationships with unspecified "industry professionals, consumers, and advertisers." Compl. ¶ 108. "The business relationship, if not an actual contract, must be 'evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994)).

Plaintiffs' allegations of a prospective business relationship are merely speculative hope of future customers that courts have routinely held are insufficient to state a claim. *See, e.g.*, *BGW Design Ltd., Inc. v. Serv. Am. Corp.*, 2010 U.S. Dist. LEXIS 128029, at *18 (S.D. Fla. Dec. 3, 2010) ("Under Florida law, this type of speculative allegation regarding a *potential* business relationship is insufficient to support a tortious interference claim"); *Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.*, 2008 U.S. Dist. LEXIS 35073, at *44-45 (M.D. Fla. Apr. 29, 2008) (dismissing claim; the "mere speculative hope that past customers will continue to avail themselves of the plaintiff's business services does not provide a proper basis for a tortious interference claim"), *aff'd*, 301 Fed. Appx. 881 (11th Cir. 2008). Having failed to adequately identify an actual business relationship, Plaintiffs fail to make any non-conclusory allegation that WOT Defendants had actual knowledge of such business relationship and interfered with it.

### 2.     Plaintiffs' Conclusory Allegations that WOT Defendants Participated in a Conspiracy Are Insufficient

As an initial matter, if the tort claims that are the alleged underlying object of the conspiracy are dismissed, Plaintiffs' conspiracy claims must be dismissed as well. *See, e.g.*, *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1096 (Fla. 4th

DCA 2009) ("Since the counts regarding the goals of the conspiracy – defamation and tortious interference – fail, so too the conspiracy count must fail.").

Additionally, however, Plaintiffs' conspiracy claim should independently be dismissed because Plaintiffs have not adequately pled any conspiracy involving WOT Defendants. Vague and conclusory allegations are insufficient. *See, e.g.*, *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1268-69 (11th Cir. 2009) (holding that vague and conclusory allegations of a conspiracy were insufficient to state a claim under *Twombly*); *Neuman v. Travel Holdings, Inc.*, 2008 U.S. Dist. LEXIS 13301, at *9 (M.D. Fla. Feb. 22, 2008) (dismissing claim where "[t]he facts pled by Plaintiff completely fail to allege any evidence of conspiracy between the[] parties").

The only averment even remotely alleging any conspiracy involving WOT Defendants is the conclusory averment that WOT Defendants conspired with users to manipulate the rating algorithm to give certain users more weight. Compl. ¶ 34.[7] That averment is a naked assertion unsupported by any factual allegations to raise it above the speculative level. *See Sinaltrainal*, 578 F.3d at 1268-69; *Neuman v. Travel Holdings, Inc.*, 2008 U.S. Dist. LEXIS 13301, at *9. Moreover, even assuming that there were any factual basis for that conspiracy, the subject of that alleged conspiracy – giving third-party users more weight in the ratings – is not an underlying tort and thus does not support a claim for civil conspiracy. *See, e.g.*, *Neuman*, 2008 U.S. Dist. LEXIS 13301, at *9. The remaining conspiracy allegations, although also deficiently pled, appear to involve only users of the WOT website and not WOT Defendants. *See, e.g.*, Compl. ¶¶ 69, 70; 123-127. Accordingly, Plaintiffs' conspiracy claim must be dismissed.

---

[7] Additionally, to the extent Plaintiffs purport to allege any conspiracy between WOT Services and AII, and their employees, such a claim is barred by the intracorporate conspiracy doctrine. *See, e.g.*, *See Ayubo v. City of Edgewater*, 2009 U.S. Dist. LEXIS 3119, at *12-13 (M.D. Fla. Jan. 16, 2009) (dismissing civil conspiracy claim based on intracorporate conspiracy doctrine).

    **3.**    **Plaintiffs' Fraudulent Misrepresentation and Misleading Advertising Claims Must Be Dismissed Because Plaintiffs Did Not Rely Upon Any Misleading Advertisement or Misrepresentation**

Plaintiffs fail to state a claim for fraudulent misrepresentation or misleading advertising. In order to allege an action for fraud, a plaintiff must allege: "1) the representor made a misrepresentation of a material fact, 2) the representor knew or should have known of the falsity of the statement, 3) the representor intended that the representation would induce another to rely and act on it, and 4) the plaintiff suffered injury in justifiable reliance on the representation." *Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs.*, 903 So. 2d 251, 255 (Fla. Dist. Ct. App. 3d Dist. 2005). Misleading advertising is a form of fraud. "To state a claim for misleading advertising under Florida law, the plaintiff must allege reliance 'on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement.'" *Simdag/Robel, LLC v. Providence Funding, Inc. (In re Simdag/Robel, LLC)*, 2009 U.S. Dist. LEXIS 35782, at *9 (M.D. Fla. Apr. 10, 2009) (citations omitted). As an initial matter, claims of fraud must be pled with particularity. *See, e.g.*, *Simdag/Robel, LLC,* 2009 U.S. Dist. LEXIS 35782, at *9. Plaintiffs' allegations fail to satisfy this standard.

The deficiencies in Plaintiffs' claims cannot, however, be cured by more detailed pleading. Although the allegations are vague, in neither claim do Plaintiffs actually allege any fraudulent misrepresentation *made by WOT Defendants* to Plaintiffs and upon which Plaintiffs relied. Rather, for their fraudulent misrepresentation claim, Plaintiffs allege that the alleged statements concerning Plaintiffs' and their associates' businesses were made by third-party users.

Likewise, it is alleged that these statements were made "with the intent that persons using the Website would rely on these false representations."  Compl. ¶ 131.  Plaintiffs do not allege that they relied upon these statements.  In the absence of any alleged reliance by Plaintiffs, their fraud claim must be dismissed. *See, e.g.*, *Centrifugal Air Pumps Austl. v. TCS Obsolete, LLC*, 2010 U.S. Dist. LEXIS 93997, at *9-10 (M.D. Fla. Sept. 9, 2010).

Similarly, Plaintiffs do not contend that they relied on the allegedly misleading advertising of WOT Defendants.  *See, e.g.*, *Locke v. Wells Fargo Home Mortg.*, 2010 U.S. Dist. LEXIS 126140, at 13-14 (S.D. Fla. Nov. 30, 2010).  Rather, Plaintiffs allege that the public who uses the WOT website relied upon the allegedly false characterization of that website.  Compl. ¶¶ 136-38.  Plaintiffs do not allege that they are users of the WOT website who relied upon these representations and thus the reliance required for such a claim is missing.[8]  Accordingly, Plaintiffs' fraudulent misrepresentation and misleading advertising claims must be dismissed.

### 4.      Plaintiffs' Unfair Trade Practices Claim Must Be Dismissed

Plaintiffs fail to plead their Florida Deceptive or Unfair Trade Practices Act ("FDUTPA") claim with the requisite specificity and fail to allege a deceptive act or unfair practice covered by the act.  In order to state a claim for a violation of the FDUTPA, "a plaintiff must show three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Grosharev v. Wilson's Ltd., Inc.*, 2010 U.S. Dist. LEXIS 52719, at *9 (M.D. Fla. May 27, 2010).

---

[8] In some instances, competitors may bring misleading advertising claims, *see Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1323 (M.D. Fla. 2007), but Plaintiffs have not alleged, nor can they allege, that Plaintiffs are competitors of WOT Defendants.

First, claims under the FDUTPA must be pled with particularity.  *See, e.g.*, *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, 2010 U.S. Dist. LEXIS 84544, at *12 (M.D. Fla. July 16, 2010).  Plaintiffs' claim fails to comply with this requirement.

Second, Plaintiffs' FDUTPA claim fails because Plaintiffs have not alleged that WOT Defendants engaged in unfair or deceptive conduct that falls within the scope of the statute. "Plaintiffs cannot satisfy this requirement by merely attaching the label 'unfair and deceptive' to acts that do not fall within the scope of this section." *Akzo Nobel Coatings, Inc.*, 2010 U.S. Dist. LEXIS 84544, at *12.  "To determine whether the alleged conduct violates the FDUTPA, courts should take into consideration 'whether the Federal Trade Commission and other federal courts deem such conduct to be an unfair method of competition or an unconscionable, unfair or deceptive act or practice under federal law.'" *Id.* at *11-12 (citations omitted).

Plaintiffs generally only allege "Defendants' practices described in detail in the aforementioned allegations above are unfair and deceptive." *See* Compl. ¶¶ 145.  This is not sufficient. *See Centrifugal Air Pumps Austl. v. TCS Obsolete, LLC*, 2010 U.S. Dist. LEXIS 93997, at *8-9 (M.D. Fla. Sept. 9, 2010) (dismissing FDUTPA claim where plaintiff "fail[ed] to identify any particular act or practice as deceptive or unfair," but instead broadly referred to the earlier allegations in the complaint and "simply assert[ed] that 'the actions described herein constitute a deceptive trade practice'").  Accordingly, this claim must be dismissed.

### 5.    Injunctive Relief Is Not a Separate Cause of Action

Plaintiffs have pled a separate cause of action seeking injunctive relief.  Injunctive relief is a remedy, not an independent cause of action, and, as such, Count IX must be dismissed. *See, e.g.*, *Chetu, Inc. v. Salihu*, 2009 U.S. Dist. LEXIS 129841, at *4-5 (S.D. Fla. July 3, 2009).

6. **Plaintiffs' Vague Shotgun Pleading in Insufficient**

As an overarching issue, the Complaint is deficient because throughout the Complaint, Plaintiffs generally refer to "Defendants" without properly describing the actions allegedly taken by each defendant. *See, e.g.*, Compl. ¶¶ 1, 18, 70-82, 85-147. This form of pleading is entirely impermissible. The Eleventh Circuit has long condemned "'shotgun' pleading" where a complaint charges all defendants in each count and is "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [numerous] defendants charged." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). This improper pleading requires dismissal of the Complaint. *See, e.g.*, *Centrifugal Air Pumps Austl. v. TCS Obsolete, LLC*, 2010 U.S. Dist. LEXIS 93997, at \*5-7 (M.D. Fla. Sept. 9, 2010).

As another example of Plaintiffs' impermissibly vague pleading, Plaintiffs repeatedly make reference to "Plaintiffs and Associates," with "Associates" being defined earlier in the Complaint as various, unspecified "entities and persons associated with Plaintiffs." These vague allegations are particularly problematic in the context of a defamation claim where the alleged harm is personal to the plaintiff. It would be impossible to defend against such a claim where a person or entity allegedly defamed has not even been identified. Moreover, there is not even any basis alleged for Plaintiffs to have standing to bring any claims on behalf of these unspecified "Associates." Accordingly, Plaintiffs should be barred from bringing claims on behalf of any unspecified "Associates." For these reasons, all of Plaintiffs' claims should be dismissed.

D. **Plaintiffs Are Required to Bring This Action in Finland**

Finally, Plaintiffs claims against WOT Defendants must be dismissed because Plaintiffs are required to bring those claims in Finland pursuant to a forum selection clause. "Forum-

selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).  Courts have given effect to forum selection clauses included in the terms and conditions of websites.  *See Int'l Star Registry v. Omnipoint Mktg.*, LLC, 510 F. Supp. 2d 1015, 1019 (S.D. Fla. 2007).  When a dispute is covered by a forum selection clause requiring adjudication in a foreign forum, as is the case here, the proper procedure is for the complaint to be dismissed pursuant to Rule 12(b)(3).  *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1290 & n.3 (11th Cir. 1998).

The WOT Terms of Service govern the "use of WOT's websites, web service API or other online services (all collectively 'Services')."  WOT Terms of Service, *available at* http://www.mywot.com/en/terms.  The Terms of Service include a forum selection clause that provides that "[a]ll disputes relating to these Terms shall be settled at District Court of Helsinki, Finland having the sole jurisdiction."  *Id.*  "By accessing or using the Services," users "agree to be bound by the Terms" as though "they [are] like any written negotiated agreement," and are instructed that "[i]f you do not agree to the Terms, do not use the Services or Software."  It is evident hat Plaintiffs have accessed or used the WOT website.  *See* Exhibits to Complaint.

All, or at least a significant portion of, the claims asserted and relief sought in the Complaint relates to the operation of the website and are thus covered by the forum selection clause.  First, the substance of Plaintiffs' defamation allegations are prohibited by the WOT Terms of Service, which expressly provide – and require persons using and accessing the WOT website to acknowledge – that WOT is not responsible for the content of the website and makes no representations as to the accuracy of the ratings:

All content ("Content") submitted to or available through the Services *is the sole responsibility of the person who originated the Content.* . . .

*WOT does not control, monitor, or have any detailed knowledge of the Content and other information presented and received through the use of the Services.* Therefore, you may be exposed to information that is erroneous, indecent or otherwise objectionable. *WOT shall not be liable for the Content and other information spread or delivered through or in connection with the Services. You agree that you shall bear all risks associated for the use of such information.*

By providing the Services, *WOT does not recommend any single website or web service. The website ratings provided in connection with the Services may not be accurate as they are based on subjective evaluations of the users. WOT makes no representations or warranties about the suitability, reliability, and accuracy of such ratings.* For the avoidance of doubt, WOT shall always have the right to remove any Content from the Services.

WOT Terms of Service (emphasis added).

Second, Plaintiffs have specifically asserted claims in connection with the use of the WOT website and how it operates, *see, e.g.*, Compl. ¶ 136, and have raised challenges to the algorithm utilized on the WOT website, *see* Compl. ¶¶ 31-32, 35.  Such claims relate to the WOT Terms of Service and are covered by the forum selection clause.

Third, Plaintiffs are seeking injunctive relief that would require WOT Defendants to remove member postings and require modification of the WOT Terms of Service going forward, affecting the rights of all WOT website users.  *See* Compl. Relief Requested ¶¶ B & C.  A request for ongoing injunctive relief concerning the operation of the WOT website (operated out of Finland) must be brought in Finland in accordance with the forum selection clause.

## IV.    CONCLUSION

For the foregoing reasons, WOT Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated:  December 14, 2010

*Of Counsel:*

Sandra A. Jeskie
(motion *pro hac vice* to be filed)
jeskie@duanemorris.com
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone:  215.979.1395
Facsimile:  215.979.1020

**DUANE MORRIS LLP**
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: 305.960.2200
Facsimile:  305.960.2201


_____ s/ Warren D. Zaffuto _____
Harvey W. Gurland, Jr., P.A.
Florida Bar No.:  284033
HWGurland@duanemorris.com
Warren D. Zaffuto
Florida Bar No. 0743461
WDZaffuto@duanemorris.com

*Counsel for Defendant WOT Services, Ltd. and
Against Intuition, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 14th day of December, 2010, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF which will send a notice of electronic filing to the following:   **Myra P. Nicholson, Esq.**, Myra Nicholson, P.A., 1743 Park, Center Drive, Orlando, Florida 32825.

_____ s/ Warren D. Zaffuto _____ __

Warren D. Zaffuto

DM1\2430145.1