## UNITED STATES DISTRCIT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CAREER NETWORK, INC., THREE STARS
MEDIA, INC., THREE STARS, INC., d/b/a
THREESTARS OF CENTRAL FLORIDA, INC.
INTERNETCOMPANY, INC., d/b/a
INTERNET-COMPANY OF CENTRAL FLORIDA, INC.,
MEDIALOGIC, INC., POWER APPLICATIONS, INC.,
MONKEYJAR, INC., and BUZZGRUB, INC.,**
                          **Plaintiffs,**

**vs.**                                    **CASE NO.  6:10-cv-01826-GAP-KRS**
                                           **INJUNCTIVE RELIEF SOUGHT**

**WOT SERVICES, LTD, AGAINST
INTUITION, INC., DAVID RAYNARD,
CONRAD LONGMORE, MELANIE ASHRAF
JOHN AND JANE DOES 1 THROUGH 100,**
**all whose true names are unknown,**
                          **Defendants.**
━━━━━━━━━━━━━━━━━━━━━━━━━/

## FIRST AMENDED COMPLAINT

Plaintiffs, Career Network, Inc., Three Stars Media, Inc., Three Stars, Inc. (doing

business in Florida as Threestars of Central Florida, Inc.), Internetcompany, Inc. (doing business

in Florida as Internet-Company of Central Florida, Inc.), Power Applications, Inc., MonkeyJar,

Inc., and Buzzgrub, Inc. (collectively "Plaintiffs") by and through their undersigned attorney, file

this First Amended Complaint ("Amended Complaint") against WOT Services, Ltd., Against

Intuition, Inc. (collectively the "WOT Defendants"), David Raynard, Conrad Longmore, Melanie

Ashraf, and John and Jane Does 1 through 100 (all Defendants collectively referred to as

"Defendants") and state as follows:

## <u>COMMON ALLEGATIONS</u>

1.      This is an action at law and in equity for damages in excess of $15,000, exclusive of costs and interest,  and the Ninth Judicial Circuit in and for Orange County, Florida has jurisdiction over this cause and over the Defendants.

2.      Career Network, Inc. ("CNI") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

3.      Three Stars Media, Inc. ("TSM") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

4.      Three Stars Inc. ("TSI") is a Missouri corporation authorized to do business in Florida under the name Threestars of Central Florida, Inc., with its principal place of business in Orlando, Florida.

5.      Internetcompany, Inc. ("ICI") is a Delaware corporation authorized to do business in Florida under the name of Internet-Company of Central Florida, Inc., with its principal place of business in Orlando, Florida.

6.      Power Applications, Inc. ("PAI") is a Delaware corporation authorized to do business in Florida with its principal place of business in Orlando, Florida.

7.      MonkeyJar, Inc. ("MJI") is a Delaware corporation with its principal place of business in Dallas, Texas.

8.      Buzzgrub, Inc. ("BGI") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

9.      Upon information and belief, WOT Services, Ltd. ("WOT Services") is organized and existing under the laws of Finland with its principal place of business in Helsinki, Finland.

10.     Upon information and belief, Against Intuition, Inc. ("AII") is organized and existing under the laws of Finland with its principal place of business in Helsinki, Finland.

11.     Upon information and belief, David Raynard is a resident of Massillon, Ohio and is *sui juris*.

12.     Upon information and belief, Conrad Longmore is a resident of Bedford, United Kingdom and is *sui juris*.

13.     Upon information and belief, Melanie Ashraf is a resident of Orlando, Florida and is *sui juris*.

14.     Upon information and belief, John and Jane Does 1 through 100 ("Doe Defendants") are individuals whose names and addresses of residence are unknown.

15.     Plaintiffs and Associates operate Internet marketing businesses, including job posting boards and online shopping communities.

16.     Upon information and belief the WOT Defendants offer the Web of Trust (hereinafter referred to the "Website") (www.mywot.com) a self described "website rating service".

17.     Upon information and belief, David Raynard ("Raynard") is a member of the Website community using the screen name "g7w".

18.     Upon information and belief, Conrad Longmore ("Longmore") is a member of the Website community using the screen name "difrawy_difrawi".

19.     Upon information and belief, Melanie R. Ashraf ("Ashraf") is a member of the Website community using the screen name "melanierose29".

20.     Upon information and belief, the Doe Defendants are members of the Website community.

21.     The WOT Defendants operate the Website which purports to be a "community-based safe surfing tool that uses an intuitive traffic-light rating system to help Web users stay safe as they search, surf and shop online."

22.     The Website indicates that the user activity rate for the United States is from 27% to 35%.

23.     The WOT Defendants maintain at least one server in the United States.

24.     The WOT Defendants have developed, designed, created, and implemented a Website rating black box system. The rating system uses sources controlled by the WOT Defendants, and algorithms designed and controlled by WOT Defendants.  The WOT Defendants control the algorithms, the sources, and the weight given to each source.

25.     The system processes ratings and calculates the reputation for each website using algorithms.  The WOT Defendants give different weights to the sources used based on their type and methodology, which means that one source can have a much larger effect on the reputation than another.

26.     The WOT Defendants developed a browser plug-in that is compatible with most, if not all browsers, including Internet Explorer and Firefox.

27.     The WOT Defendants seek individual users to install the browser plug-in on their browsers that will indicate whether a particular website has been rated by any users of this services provided by the WOT Defendants.

28.     The WOT Defendants additionally seek individual users to register with the Website community in order to get these individuals to rate websites that they have visited via their internet browsers.

29.     The WOT Defendants encourage these individuals to click on the Web of Trust button while on the website of interest that will then provide four categories that were developed and created by the WOT Defendants.  Those initial categories are 1. Trustworthiness; 2. Vendor Reliability; 3. Privacy, and 4. Child Safety.

30.     The WOT Defendants further allow the option of leaving one and/or more pre-selected comments that were developed and created by the WOT Defendants.  The seventeen pre-selected comments are: 1. Good Site; 2. Useful, Informative; 3. Entertaining; 4. Good Customer Experience; 5. Child Friendly; 6. Spam; 7. Annoying Ads or Popups; 8. Bad Customer Experience; 9. Phishing or Other Scams; 10. Malicious Content, Viruses; 11. Browser Exploit; 12. Spyware or Adware; 13. Adult Content; 14. Hateful, Violent or Illegal Content; 15. Ethical Issues; 16. Useless; and 17. Other.

31.     Once a user of  the Website leaves a negative or poor  rating and/or comment on a website, a warning from the WOT Defendant's plug-in indicates the following: "WARNING! You have given this site a poor rating, which triggered a warning."

32.     After attaching a negative warning to a website, from thereafter, anyone using the Website plugin in their browsers will be alerted to the warning created and developed by the WOT Defendants even if the negative rating has no basis in fact except from the opinion from the user with the pre-selected categories of ratings from the WOT Defendants.

33.     Because the WOT Defendants are responsible for creating and developing information provided through the Internet they therefore meet the definition of an "information content provider" under the Communication Decency Act of 1996, *47 USCS § 230* ("CDA").

34.     The WOT Defendants have conspired with Raynard, Longmore, Ashraf and the Doe Defendants to manipulate the algorithm so that members who post predominantly negative

35.     The WOT Defendants have and continue to abuse their self-created algorithm to achieve their self serving results.  The WOT Defendants are aware that members can and do abuse the black box system by posting false and defamatory statements about individuals and companies and not only have taken no action to stem this abuse, in fact they encourage and reward members who abuse the system.  The more sites members rate, irrespective of the accuracy of their ratings, the higher their credibility ratings and the more weight their ratings have in the algorithm.

36.     The WOT Defendants further clarify that the company itself determines, creates, and/or develops website ratability  by its use of other website rating third-parties, such as PhishTank, in addition to ratings from its users as explained in the FAQ section of the Support Tab of the Website, which states as follows:

> While our primary source of knowledge is ratings from our users, we also take advantage of hundreds of carefully chosen trusted sources, such as listings of phishing sites from PhishTank.  This provides WOT with a fast, automated, and reliable means of protecting our users from new, rapidly spreading online threats.

37.     Additionally, in a post on the Website's blog dated December 22, 2006, Sami Tolvahen ("Tolvahen"), an employee of the WOT Defendants, who is also a co-founder of AII and WOT Services, a co-developer of the WOT rating system, states:

> As already discussed in a number of previous posts, not everyone has an equal say in WOT reputations. You must prove yourself before we take you seriously. This makes it more difficult to manipulate the system, and also allows us to more precisely compute exactly how much the reputation estimates can be trusted. In addition to reputation, our algorithms also calculate another value, the confidence in the reputation.

38.     In another post dated October 5, 2006, Tolvahen states, in part:

**Trust is subjective**
In WOT, website reputations are computed using an algorithm loosely based on Bayesian probability. Each testimony is weighted by how much the system trusts the user or other source who gave it.

**Personal reputation**
Once you have shared your opinion on a fair number of websites, WOT starts looking for other users who agree with you. These users are ranked by how well their testimonies match yours, and the most compatible of the group become your friends. You will never know who they are nor will they know you, but when WOT computes the reputations to show on your extension, their testimonies weigh more than those from other users. This makes it possible for WOT to better adapt to what you personally trust, while still not ignoring the overall opinion.

39.     The WOT Defendants encourage their employees and other individuals associated with WOT Services and AII to post false negative and defamatory statements to raise the Website's ranking on Internet search engines.

40.     The defamatory postings are accessible in Florida and have been accessed in Florida.

41.     The WOT Defendants actively post to the Website and WOT community, including rating and commenting on individual websites.

42.     The WOT Defendants also encourage and support abuse of its rating system by awarding the abusive Website members Platinum memberships, the Website's highest level of credibility and weight, and reward them with annual awards such as the "Scam Buster" Award and the "Top Member" Award.

43.     Raynard is a platinum member of the WOT community.

44.     Raynard has been a member of the WOT community since November 2008.  As of September 16, 2010, less than two years after he became a member, he has an activity score of

51,607; has posted 522,824 ratings and 548,675 posts.  That equates to over 830 posts every day over the 22 month period he has been a member.

45.     The WOT Defendants awarded Raynard the "Scam Buster" and "Top Member" Awards for 2009.

46.     Raynard has posted defamatory information regarding the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.

47.     At all times material hereto Raynard posted the false information with knowledge and/or reckless disregard for its falsity.

48.     Raynard intended that the false postings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

49.     Raynard's postings to the Website are accessible in Florida and have been accessed in Florida.

50.     Longmore is a platinum member of the WOT community.

51.     Longmore has been a member of the WOT community since March 2009.  As of September 16, 2010, a year and a half after he became a member, he has an activity score of 12,358; has posted 5,928 ratings and 4,421 posts.

52.     All of Longmore's 5,928 ratings and 4,421 posts are directed at the Plaintiffs and Associates.  In fact, his screen name "difrawi_difrawy" is alternative spellings of the name of a person associated with Plaintiffs.

53.     It is clear that Longmore has a vendetta against the Plaintiffs and Associates.

54.     The WOT Defendants have not only allowed this vendetta, they have promoted and encouraged it by refusing to delete any of the Longmore ratings and posts and by awarding him the "Scam Buster" Award for 2009.

55.     Longmore has made over 10,000 defamatory posts and ratings directed entirely and exclusively at the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.

56.     At all times material hereto Longmore posted the false and defamatory information with malice and knowledge and/or reckless disregard for its falsity.

57.     Longmore intended that the false and defamatory postings and ratings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

58.     Longmore's postings and ratings on the Website are accessible in Florida and have been accessed in Florida.

59.     Ashraf is a member of the WOT community.

60.     Ashraf has been a member of the WOT community since January 2010

61.     At all times material hereto Ashraf posted the false and defamatory information with malice and knowledge and/or reckless disregard for its falsity.

62.     Ashraf intended that the false and defamatory postings and ratings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

63.     Ashraf's postings and ratings on the Website are accessible in Florida and have been accessed in Florida.

64.     The Doe Defendants have posted defamatory information regarding the Plaintiffs and Associates accusing them of on-going criminal and fraudulent activity.

65.     At all times material hereto the Doe Defendants posted the false and defamatory information with knowledge and/or reckless disregard for its falsity.

66.     The Doe Defendants intended that the false and defamatory postings and ratings would injure the Plaintiffs' and Associates' business and personal reputations in the State of Florida.

67.     The Doe Defendants' postings to the Website are accessible in Florida and have been accessed in Florida.

68.     The defamatory statements made by Raynard, Longmore, Ashraf and the Doe Defendants are knowingly false, or are made with reckless disregard of their falseness, and are designed to harm Plaintiffs' and Associates' business and personal reputations.

69.     Upon information and belief, Raynard, Longmore, Ashraf and the Doe Defendants conspired to post and publish false and defamatory information about Plaintiffs and Associates in an attempt to discredit Plaintiffs and Associates and interfere with their personal and business operations. See Exhibit "A".

70.     Upon information and belief, the Defendants collectively conspired to post and publish false and defamatory information about Plaintiffs and Associates in an attempt to discredit Plaintiffs and Associates and interfere with their personal and business operations.  See Exhibit "B".

71.     At all times material to this cause of action, the Defendants knew that Plaintiffs and Associates conducted business in the United States.

72.     At all times material to this cause of action, the Defendants knew, or should have known, that Plaintiffs CNI, TSI, ICI, and PAI, and Associates were authorized to do business in the State of Florida and maintained their offices in Orlando, Florida.

73.     At all times material to this cause of action, the Defendants knew that Plaintiffs and Associates were associated persons and entities.

74.     The Defendants directed their defamatory statements toward recipients in the United States and posted the information knowing and desiring that it would cause harm and damages to Plaintiffs and Associates in the United States, the State of Florida, and elsewhere.

75.     The Website as well as the posts and ratings made by the Defendants are accessible in Florida and were accessed in Florida.

76.     The false and defamatory statements and ratings authored and posted by the Defendants on the Website subject Plaintiffs and Associates to distrust, ridicule, contempt, and disgrace.  These defamatory statements and ratings also impute conduct, characteristics, and conditions incompatible with the proper exercise of Plaintiffs' and Associates' lawful businesses.

77.     The Defendants do not have substantiation for their claims.

78.     The Defendants do not couch their statements as opinion or otherwise qualify the statements.

79.     Plaintiffs have notified the WOT Defendants on more than one occasion that the statements are false, defamatory, and injurious.

80.     The Defendants have continued to post defamatory statements after Plaintiffs notified the WOT Defendants that the statements are false, defamatory, and injurious.

81.     By continuing to post the defamatory statements and using their self-serving algorithm the WOT Defendants have maliciously and intentionally defamed Plaintiffs and Associates.

82.     The Defendants, via the Website, have made defamatory statements that are accessible in Florida and were accessed in Florida.

83.     On September 3, 2010, Plaintiffs sent Vesa Perälä, the CEO of WOT Services and AII, the notice letter required by Florida Statutes, §770.01.  The letter was delivered to WOT

## COUNT I
## DEFAMATION PER QUOD

84.     Plaintiffs reallege Paragraphs 1– 83 as if fully restated herein.

85.     Defendants have made false, defamatory and injurious statements about Plaintiffs and Associates.

86.     Defendants' false and defamatory statements were made with knowledge of their falsity or reckless disregard of the truth or falsity of the statements.

87.     Defendants published false statements to third parties via the Internet.

88.     Defendants' publication of the false, defamatory and injurious statements was not subject to any available publication or legal privilege.

89.     Defendants' false, defamatory and injurious statements exposed Plaintiffs and Associates to distrust, hatred, contempt, ridicule and embarrassment.

90.     Defendants' false, defamatory and injurious statements harm the reputation of Plaintiffs and Associates so as to lower Plaintiffs and Associates in the estimation of Plaintiffs' and Associates' employees and business associates and interfere with the relationship between Plaintiffs and Associates and their employees and business associates.

91.     Defendants directed the false and defamatory statements to Plaintiffs and Associates in the State of Florida with the specific intent and knowledge that the statements would damage Plaintiffs and Associates in the State of Florida.

92.     Defendants made the false and defamatory statements with actual malice toward Plaintiffs and Associates with the specific intent to damage and harm Plaintiffs and Associates.

93.     Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

94.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Associates have suffered actual damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT II
## DEFAMATION PER SE

95.     Plaintiffs reallege Paragraphs 1–83 as if fully restated herein.

96.     Defendants have made false statements about Plaintiffs and Associates which are *per se* injurious as they accuse the Plaintiffs and Associates of perpetrating ongoing scams and illicit business dealings.

97.     The nature of the false statements is such that malice and actual damage is presumed.

98.     Defendants published false statements to third parties via the Internet.

99.     Defendants' publication of the false, defamatory and injurious statements was not subject to any available publication or legal privilege.

100.     Defendants' false, defamatory and injurious statements exposed Plaintiffs to distrust, hatred, contempt, ridicule and embarrassment.

101.     Defendants' false, defamatory and injurious statements harm the reputation of Plaintiffs and Associates so as to lower Plaintiffs and Associates in the estimation of Plaintiffs' and Associates' employees and business associates and interfere with the relationship between Plaintiffs and Associates and their employees and business associates.

102.     Defendants' false and defamatory statements were made with knowledge of their falsity or reckless disregard of the truth or falsity of the statements.

103.     Defendants directed the false and defamatory statements to Plaintiffs and Associates in the State of Florida with the specific intent and knowledge that the statements would damage Plaintiffs and Associates in the State of Florida.

104.     Defendants made the false and defamatory statements with actual malice toward Plaintiffs and Associates with the specific intent to damage and harm Plaintiffs and Associates.

105.     Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

106.     Plaintiffs and Associates have suffered damages in the State of Florida as a result of Defendants' actions.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT III
## INTERFERENCE WITH BUSINESS RELATIONSHIP

107.     Plaintiffs reallege Paragraphs 1–83 as if fully restated herein.

108.     Plaintiffs and Associates have established business relationships with industry professionals, consumers, and advertisers through their various businesses.

109.     Defendants, at all times material hereto, knew of the existing business relationships between Plaintiffs and Associates and their advertisers, business associates, employees, independent contractors and Internet consumers.

110.     Defendants intentionally interfered with the business relationships by posting false and defamatory statements for the express purpose of destroying Plaintiffs' and Associates' established and future business relationships.

111.    Defendants' interference with Plaintiffs' and Associates' business relationships was without legal or other justification.

112.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

113.    As a result of Defendants' intentional and unjustified interference, Plaintiffs and Associates have suffered damages to their existing business relationships and continue to suffer damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT IV
## INJURIOUS FALSEHOOD- TRADE LIBEL

114.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

115.    Defendants made and published defamatory statements about Plaintiffs' and Associates' businesses and business practices which are untrue and disparaging as to the nature and manner in which Plaintiffs and Associates conduct business.

116.    Defendants published false statements to third parties through posting the statements via the Internet.

117.    Defendants knew that the false statements were likely to influence prospective users of Plaintiffs' and Associates' businesses to avoid Plaintiffs' and Associates' businesses.

118.    The false statements materially and substantially induced third parties not to utilize Plaintiffs' and Associates' business and to not contract with Plaintiffs and Associates.

119.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

120.    As a result of Defendants' publishing the false statements to third parties, employees, and business associates, Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

### COUNT V
### CIVIL CONSPIRACY

121.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

122.    At all times material hereto Defendants agreed to engage in actionable conduct against Plaintiffs and Associates.

123.    Defendants agreed, combined, and conspired with one another to post on the Internet false and defamatory statements regarding Plaintiffs and Associates.

124.    Defendants agreed, combined, and conspired to conceal the identities of the Doe Defendants with the intent to cause Plaintiffs and Associates serious economic harm as well as harm to their respective business reputations

125.    Defendants agreed, combined, and conspired to ruin the reputation of Plaintiffs and Associates by posting false negative information on public websites for others to find and use to attack Plaintiffs and Associates.

126.    Defendants agreed, combined, and conspired to encourage individuals to file unfounded complaints against Plaintiffs and Associates with the Better Business Bureau, other Internet websites, and with law enforcement agencies falsely claiming they were victims of fraudulent business practices.

127.    Defendants agreed, combined, and conspired to use the unfounded complaints to increase the number of complaints against Plaintiff and Associates to use as evidence of wrong-doing to generate more unfounded complaints.

128.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

129.    As a direct proximate result of the Defendants' actions, Plaintiffs and Associates have suffered damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT VI
## FRAUDULENT MISREPRESENTATION

130.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

131.    At all times material hereto, Defendants knowingly made false statements concerning the operation of Plaintiffs' and Associates' businesses with the intent that persons using the Website would rely on these false representations, would not conduct business with or become employed by Plaintiffs and Associates and would thereby cause injury to Plaintiffs and Associates.

132.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

133.    As a result of Defendants' fraudulent misrepresentations, Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT VII
## MISLEADING ADVERTISING

134.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

135.    At all times material hereto Defendants knew that statements disseminated and promoted on the Website were false and misleading, but continued to disseminate and promote the false and misleading statements with the intent of inducing the public to utilize the Website.

136.    The WOT Defendants claim to objectively post both positive and negative information on various websites; however, the mechanism by which they post information is subjective and not objective.

137.    The public has relied and continues to rely on the information provided on the Website believing it is objective.

138.    The WOT Defendants knew that the false and misleading statements were likely to influence prospective users of Plaintiffs' and Associates' businesses to avoid Plaintiffs and Associates' businesses.

139.    The false statements materially and substantially induced the public to not utilize Plaintiffs' and Associates' business and to not contract with Plaintiffs and Associates.

140.    Defendants' false and defamatory statements were accessible in Florida via the Internet and were accessed in Florida.

141.    As a result of the WOT Defendants' misleading advertisements Plaintiffs and Associates have suffered pecuniary loss in the form of lost business revenues and business contracts.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages, costs, prejudgment interest and such other relief as the Court deems just and proper.

## COUNT VIII
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

142.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

143.    By the acts described above, Defendants have engaged in unfair, deceptive, and unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat. §501.201, et seq.*

144.    Defendants' unconscionable and deceptive acts and practices were designed to inflict injury and harm upon Plaintiffs and to disrupt Plaintiffs' business by developing and/or creating untrue, unjust, unconscionable negative ratings on Plaintiffs' websites that falsely indicated Plaintiffs engaged in phishing activities, was unethical, and was otherwise a scam.

145.    In addition, Defendants have sought to maliciously disparage Plaintiffs to other individuals and the general public by, among other things, making false and untrue statements alleging that Plaintiffs engaged in unlawful behavior, engaged in phishing activities, was unethical, and was otherwise a scam.

146.    Defendants have defamed Plaintiffs by falsely and untruthfully accusing them of engaging in phishing activities, criminal activities, unethical behavior, and other improper conduct.

147.    In short, Defendants have maliciously and malevolently impugned Plaintiffs' business operations and reputation in order to secure an improper business advantage to benefit Defendants' Website and business.

148.    Plaintiffs have been injured by virtue of Defendants' deceptive and unfair trade practices as contemplated by *Fla. Stat. Sec. 501.204* in an amount that is currently unknown.  In addition to damages, Plaintiffs have also incurred litigation costs, attorneys' fees, and expenses.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for damages on account of their deceptive and unfair actions, costs, prejudgment interest, attorney's fees under *Fla. Stat. §501.2105* and such other relief as the Court deems just and proper, including injunctive relief should the court find that there is no adequate remedy at law.

## COUNT IX
## INJUNCTIVE RELIEF

149.    This is an action in equity for injunctive relief.

150.    Plaintiffs reallege Paragraphs 1-83 as if fully restated herein.

151.    Based on the facts as set forth herein, Plaintiffs have a substantial likelihood of success on the merits of the asserted causes of action.

152.    Plaintiffs do not have an adequate remedy at law.

153.    Monetary damages are inadequate to protect the present and future business interests and reputation of the Plaintiffs and Associates.

154.    Injunctive relief would provide a benefit to, and is in the interests of, the public, as it would prevent defamation, libel and other actionable conduct through the use of the Internet.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court grant the following relief:

A.      Award damages, both compensatory and punitive, against Defendants;

B.      Grant a permanent injunction against Defendants enjoining Defendants from hosting, posting, or in any manner publishing or disseminating, whether in their legal identities or under any aliases, whether now created or created in the future, any defamatory or injurious information relating to Plaintiffs or Associates;

C.      Order Defendants to remove from the Internet and any other media, of any kind or nature, all actionable statements posted or published against Plaintiffs and Associates;

D.      Award Plaintiffs fees and costs incurred in prosecution of these actions; and

E.      Award Plaintiffs such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of January, 2011, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following: Harvey W. Gurland, Jr., Duane Morris, LLP, 200 S. Biscayne Blvd, Suite 3400 Miami, FL 33131-2318 and Warren Daniel Zaffuto, Duane Morris, LLP, 200 S. Biscayne Blvd, Suite 3400, Miami, FL 33131-2318 and I further certify that I emailed the foregoing document and the notice of electronic filing to the following non-CM/ECF participant: Sandra A. Jeskie, Duane Morris, LLP, 30 South 17th Street, Philadelphia, PA 19103-4196.

/s/Myra P. Nicholson
Myra P. Nicholson, Esq.
Florida Bar No.: 0710024
Myra Nicholson, P.A.
1743 Park Center Drive
Orlando, Florida 32825
Phone:  407-803-4729
Facsimile:  407-803-5861
Email:  myra@mnicholson-law.com

Attorney for Plaintiffs