UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

---

**CAREER NETWORK, INC., et al,**

                **Plaintiffs,**                **Case No. 6:10-cv-01826-GAP-KRS**

    **v.**

**WOT SERVICES, LTD, et al.,**

                **Defendants.**

---

**DEFENDANTS WOT SERVICES, LTD AND AGAINST INTUITION, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND
AND FOR ATTORNEY'S FEES AND COSTS**

Defendants WOT Services, Ltd. ("WOT Services") and Against Intuition, Inc. ("AII") (collectively, "WOT Defendants"), submit this Memorandum of Law in Opposition to the Motion of Plaintiffs Career Network, Inc., Three Stars Media, Inc., Three Stars, Inc. d/b/a Threestars of Central Florida, Inc., Internetcompany, Inc. d/b/a Internet-Company of Central Florida, Inc., Medialogic, Inc., Power Applications, Inc., MonkeyJar, Inc., and Buzzgrub, Inc. (collectively, "Plaintiffs"), for Remand and for Attorney's Fees and Costs.

## I.      INTRODUCTION

As foreign defendants, WOT Defendants (Finnish companies) have a strong interest in having this dispute litigated in federal court. For the reasons set forth in their pending Motion to Dismiss, Plaintiffs' claims against them are deficient and must be dismissed. In attempting to delay the resolution of that motion and the inevitable dismissal of their claims, Plaintiffs assert two arguments seeking to remand this case back to state court, neither of which have any merit.

First, Plaintiffs argue that removal was procedurally defective because an individual defendant—who Plaintiffs candidly admit they *incorrectly* identified, *erroneously* served with the Complaint, and for who Plaintiff failed to file a Proof of Service—did not join in the notice of removal.  Under well-settled law, nominal defendants do not need to join in a notice of removal, and this incorrectly identified individual against whom Plaintiffs readily admit they have no claim and who Plaintiffs intend to drop from this suit certainly is a nominal defendant. As such, the notice of removal was not procedurally defective.

Second, although they do not deny that the damages they are seeking exceed $75,000, Plaintiffs argue that WOT Defendants impermissibly speculated as to the amount of Plaintiffs' damages.  Plaintiffs contend that it is insufficient to satisfy the amount in controversy requirement necessary for diversity jurisdiction.  In making this argument, Plaintiffs rely on inapplicable case law and ignore the Eleventh Circuit's most recent precedent on this subject, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010), and *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).  Under the standards set forth in *Pretka* and *Roe*, a defendant may make reasonable deductions, inferences, and extrapolations in assessing the amount in controversy, and this Court is permitted to evaluate the value of a plaintiff's claims based on its judicial experience and common sense.

Contrary to the assertions in Plaintiffs' Motion for Remand, WOT Defendants did not merely speculate as to the amount in controversy, but they carefully considered the nature of the damages potentially recoverable from the claims asserted, Plaintiffs' allegations of the harm they allegedly suffered, and the information provided by Plaintiffs to WOT Defendants as to the scope of that alleged harm.  In doing so, consistent with *Pretka* and *Roe*, WOT Defendants made

reasonable deductions, inferences, and extrapolations, which establish that the likely amount in controversy for Plaintiffs' claims exceeds $75,000.

Accordingly, because there was no procedural defect in the notice of removal and this case implicates an amount in controversy in excess of $75,000, Plaintiffs' Motion for Remand must be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action against WOT Defendants in Ninth Judicial Circuit in and for Orange County, Florida, on October 7, 2010.  In their Complaint, Plaintiffs advance nine theories of liability, all of which seek to hold WOT Defendants liable for statements made by third-party users on WOT Defendants' Web of Trust website, www.mywot.com, and the ratings that are generated from those third-party statements.  Specifically, Plaintiffs, who are seven companies that operate internet marketing businesses, allege that certain third-party users rated Plaintiffs' websites negatively and made comments expressing their belief that, among other things, Plaintiffs' businesses operate scams that improperly obtain and sell personal information from individuals who use Plaintiffs' websites.  Plaintiffs are affiliated with an individual named Ayman Difrawi, *see* Compl. ¶ 57, and the third-party statements against Plaintiffs' business practices are not confined to the WOT website as reflected by the numerous defamation claims Mr. Difrawi and his companies have filed.  *See, e.g.*, *Difrawi v. Henderson*, No. 6:07-cv-1854-Orl-22KRS (M.D. Fla.); *Difrawi v. Garga-Richardson*, No. 6:08-cv-00904-GAP-GJK (M.D. Fla.); *Internet Solutions v. Garga-Richardson*, No. BC394102 (Cal. Sup. Ct. L.A. Cty.).

After being served pursuant to the Hague Convention in Finland on November 18, 2010, WOT Services filed a timely notice of removal on December 7, 2010 (Doc. No. 1), removing this

action to this Court on the basis that there is complete diversity among the citizenship of the named parties and the amount in controversy exceeded $75,000.  That notice of removal was amended on December 9, 2010 (Doc. No. 3), to clarify that it was also being brought on behalf of AII, which is actually the same company as WOT Services.

In this action, Plaintiffs named as Defendants WOT Services, AII, several individual WOT employees, and one WOT user identified in the Complaint as "David Stadler aka g7w." Prior to seeking removal, WOT Defendants confirmed that none of the other defendants had been served with the Complaint.  As it turns out, Plaintiffs themselves incorrectly identified WOT user g7w as a person named David Stadler, but Plaintiffs now allege that they were wrong and WOT user g7w is actually an individual named David Raynard.  Plaintiffs have offered no explanation for how they originally came up with the name David Stadler.  Making matters worse, Plaintiffs went so far as to actually serve the Complaint on a third-party having no connection to this suit (who actually appears to be named David Sta*ld*er) on October 20, 2010. Defendants had no way to know that David Stadler had been served because Plaintiffs never filed a Proof of Service and David Stadler has no connection to the facts of this suit.  Moreover, Plaintiffs failed to advise WOT Defendants' counsel that they mistakenly served the Complaint on a incorrectly identified individual until December 21 and 22, 2010.

On December 14, 2010, WOT Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 7.)  In that Motion to Dismiss, Defendants argued that Plaintiffs' claims are barred by the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, which preempts attempts to hold website operators, like WOT Defendants, from liability for content posted by third-party

users.  WOT Defendants also argued that Plaintiffs' entire Complaint is based on vague and conclusory allegations and otherwise fails to allege essential elements of their claims.

Plaintiffs moved to stay consideration of WOT Defendants' Motion to Dismiss until after the Court ruled on a yet-to-be-filed Motions to Drop and Substitute Party Defendants and Remand.  (Doc. No. 10.)  This Court denied that motion on January 2, 2011 (Doc. No. 13.) Despite this order and despite the fact that Plaintiffs' opposition to WOT Defendants' Motion to Dismiss is now long overdue, Plaintiffs have yet to file an opposition to that motion.

On January 3, 2011, Plaintiffs filed a Motion for Remand.  (Doc. No. 14.)  In that motion Plaintiffs argue that: (1) the notice of removal was procedurally defective because the incorrectly identified Mr. Stalder (who Plaintiffs now want to dismiss from the suit) did not join in that notice; and (2) the amount in controversy requirement is not satisfied because Plaintiffs strategically avoid pleading the amount of their claimed damages.  WOT Defendants now submit this memorandum of law in opposition and request that that motion be denied for the reasons set forth below.

## III.   ARGUMENT

### A.   <u>Plaintiffs' Own Errors Do Not Defeat Removal</u>

There is no merit to Plaintiffs' contention that removal was procedurally defective because an *incorrectly* named individual with absolutely *no* connection to this lawsuit and who Plaintiffs now want to dismiss, did not join in the notice of removal.  Indeed, Plaintiffs own filings provide abundant evidence on which to deny their Motion for Removal, as reflected below:

- David Stalder was incorrectly named in the Complaint and has no connection to the facts averred in the Complaint.  *See* Motion for Leave at 3 ("After Plaintiffs

learned that the person using the screen name 'g7w' was in fact Mr. Raynard and not Mr. Stadler [sic], Plaintiffs decided to amend their state court complaint to correct the error").

- Plaintiffs failed to file a Proof of Service for David Stadler, such that Defendants could have knowledge of his service, albeit incorrect service.  *See*  Exh. A – Docket from Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida Case No. 2010-CA-022724-O.

- Plaintiffs now seek to dismiss David Stadler from this action by substituting one defendant and adding 2 other defendants, one of which is *not-diverse*.  *See id.* at 4 ("Plaintiffs intend to substitute Mr. Raynard for Mr. Stadler [sic] to correct an identity error."); *id.* at 3 ("Since Plaintiffs were amending the state court complaint and had also discovered the identity of two of the Doe Defendants, instead of issuing Doe summons, Plaintiffs decided to substitute Conrad Longmore and Melanie Ashraf, a non-diverse defendant, for two of the Doe Defendants.").

"The well-established rule is that a nominal defendant need not join in or consent to removal . . . ."  *DASMA Invs., LLC v. The Realty Ass. Fund III*, 459 F. Supp. 2d 1294, 1299 (S.D. Fla. 2006) (citing *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970)); *see also Diaz v. Kaplan Univ.*, 567 F. Supp. 2d 1394, 1402 (S.D. Fla. 2008) ("[T]he consent of fraudulently joined or nominal parties is not required; their lack of consent does not defeat removal.").

A defendant may be considered "nominal" when there is no possible cause of action against that defendant, there is no reasonable basis for liability against that defendant, or no relief is sought against that defendant.  *See DASMA Invs., LLC*, 459 F. Supp. 2d at 1299 (denying motion for remand, finding a non-consenting defendant to be "a nominal defendant whose consent to removal was not required" when "there is no claim that [plaintiff] can make against [the non-consenting defendant], and no effective relief that [plaintiff] can obtain against [the non-consenting defendant]"); *see also Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833

(8th Cir. 2002) ("[N]ominal defendants, those 'against whom no real relief is sought,' need not join in the petition."); *Farias v. Bexar County Bd. of Trustees*, 925 F.2d 866, 871-72 (5th Cir. 1991) ("The bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the nonremoving defendant in state court."); *Norman v. Cuomo*, 796 F. Supp. 654, 658 (N.D.N.Y 1992) ("[A] party is considered nominal if 'no cause of action or claim for relief is or could be stated against him or on his behalf. . . .'").

Mr. Stalder must be considered a nominal defendant (indeed, he is less than that). Plaintiffs readily acknowledge that they have no claim against him. Mr. Stalder has no connection to the allegations in this lawsuit and has unnecessarily been brought into this case solely as a result of Plaintiffs' own carelessness. Under well-settled law, Mr. Stalder's status a nominal defendant means that his consent to removal was not required. Accordingly, the failure of Mr. Stalder to join in the notice of removal does not require remand.

**B.      The Notice of Removal Adequately Alleges A Basis For Jurisdiction**

Defendants have adequately alleged that this Court has subject matter jurisdiction over this dispute. The removal statute provides in relevant part that "'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441. "Such original jurisdiction exists, for example, if there is 'diversity of citizenship,' such as where the suit is between citizens of different states and the amount-in-controversy exceeds the statutorily prescribed amount," which currently is $75,000. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 947 (11th Cir. 2000) (citing 28 U.S.C. § 1332). Plaintiffs' argument that this case should be remanded because the amount in controversy requirement under § 1332 is not

satisfied, ignores the Eleventh Circuit's most recent precedent on this subject, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010), and *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010), and misrepresents the allegations supporting jurisdiction set forth Defendants' Notice of Removal.  Under the standards set forth in *Pretka* and *Roe*, this Court has subject matter jurisdiction over this dispute.

> **1.    The Amount In Controversy May Be Established By Reasonable Deductions, Inferences, Or Extrapolations, As Well As The Court's Common Sense and Judicial Experience**

When, as is the case here, "a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the . . . jurisdictional requirement.'"  *Roe*, 613 F.3d at 1061 (*quoting Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)) (emphasis added).  "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka*, 608 F.3d at 754.

In arguing that Defendants have failed to satisfy their burden on establishing the amount in controversy, Plaintiffs primarily rely upon *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007).  Contrary to Plaintiffs' arguments, the Eleventh Circuit recently clarified that "*Lowery* did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible, as some district courts have thought."  *Pretka*, 608 F.3d at 753.  To the contrary, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable."  *Roe*,

613 F.3d at 1061-62 (quoting *Pretka*, 608 F.3d at 754).  "Put simply, a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount.'"  *Id.*  "The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka*, 608 F.3d at 754. "'An inference is not a suspicion or a guess,'" but rather, "'[i]t is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.'"  *Id.* (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)).

There is no limit on the "types of evidence that may be used to satisfy the preponderance of the evidence standard."  *Id.* at 755-56.  The jurisdictional facts supporting removal must be judged at the time of the removal, however, a court may consider and request additional evidence in assessing whether the jurisdictional requirement is satisfied.  *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."); *Sierminski*, 216 F.3d 945, 947 (11th Cir. 2000) ("[T]here is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition.").

Additionally "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Roe*, 613 F.3d at 1062.  "[P]reventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case," which "would reward plaintiffs for employing the kinds of manipulative devices against which the Supreme Court has admonished [courts] to be vigilant."  *Id.*  at  1064.  "[W]hen

a district court can determine, relying on its judicial experience and common sense, that a claim

satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's

representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly

be denied the removal to which it is entitled." *Id.*

2.       **Plaintiffs' Claims More Likely Than Not Exceed The Jurisdictionally Required Amount In Controversy**

As a threshold matter, it is particularly telling that nowhere in the Motion for Remand do

Plaintiffs actually deny that the amount in controversy is more than $75,000 or affirmatively

state that the amount is something less than that.  It is further telling that during the Local Rule

3.01(g) conference, Plaintiffs never even raised the amount in controversy as a basis for seeking

remand.  Mr. Difrawi and his companies are not strangers to these courts and have filed

numerous cases based upon similar allegations of defamation and trade libel (which to date have

been unsuccessful),[1] where the alleged damages were in excess of $75,000.  *See* Verified Compl.

¶¶ 21, 108, 122, 129, 144, 151, 158, 168, Doc. No. 1, *Difrawi v. Henderson*, No. 6:07-cv-1854-

Orl-22KRS (M.D. Fla.) (filed Nov. 21, 2007); Am. Compl., Doc. No. 4, *Difrawi v. Henderson*,

No. 6:07-cv-1854-Orl-22KRS (M.D. Fla.) (filed Dec. 14, 2007); Compl. ¶ 2 , Doc. 1, *Difrawi v.

Garga-Richardson*, No. 6:08-cv-00904-GAP-GJK (M.D. Fla.) (filed June 6, 2008).  One obvious

difference in this case is that it is alleged that more of Mr. Difrawi's companies are involved and

the WOT website has far greater reach than the internet bulletin boards at issue in those cases.  It

---

[1] Most recently, in the *Henderson* case was voluntarily dismissed when the Plaintiffs showed up on the morning of trial unprepared to present their case..  Transcript of Mar. 15, 2010 Jury Trial, No. 6:07-cv-1854-Orl-22KRS (M.D. Fla.),  Doc. No. 127.  The *Garga-Richardson* suit was voluntarily dismissed and re-filed in California state court where it was dismissed under California's anti-SLAPP statute. Dec. 28, 2008 Order Striking Complaint, *Internet Solutions v. Garga-Richardson*, No. BC394102 (Cal. Sup. Ct. L.A. Cty.).

is inconceivable how Mr. Difrawi and his counsel could have alleged in good faith in those pleadings—signed under Rule 11 and one instance personally verified by Mr. Difrawi—that damages for similar allegations involving Mr. Difrawi's companies exceeded $75,000, but could maintain in this case that the amount in controversy is less than $75,000.

Contrary to the assertions in Plaintiffs' Motion for Remand, WOT Defendants did not merely speculate as to the amount in controversy.  Although WOT Defendants strenuously dispute that Plaintiffs are ultimately entitled to any damages, WOT Defendants carefully considered the nature of the damages potentially recoverable from the claims asserted, Plaintiffs' allegations of the harm it allegedly suffered, and the information provided by Plaintiffs to WOT Defendants as to the scope of that alleged harm.  Based on this information, WOT Defendants made reasonable deductions, inferences, and extrapolations to conclude that the amount in controversy was necessarily in excess of $75,000.  By exercising its own judicial experience and common sense as authorized by the Eleventh Circuit in *Roe*, this Court can similarly conclude that amount in controversy exceeds that amount.

First, Plaintiffs ignore the factual allegations and analysis in the Notice of Removal as to the damages Plaintiffs' claimed to have suffered in connection with the alleged interference with business relationships, trade libel, civil conspiracy, fraudulent misrepresentation, and misleading advertising claims.  In terms of actual damages, Plaintiffs alleged that they had "suffered pecuniary loss in the form of lost business revenues and business contracts."  Compl. ¶¶ 120, 133, 141; *see also* Compl. ¶¶ 113, 124.  In calculating the amount of damages claimed, WOT Defendants specifically relied upon information communicated to the WOT Defendants by Plaintiffs prior to filing this suit.  As stated in the Notice of Removal, in 2009 Plaintiffs

specifically advised the WOT Defendants that the alleged defamatory comments concerning the

Monkey Jar website had such a significant impact on Plaintiffs' new customer registrations and

profits that it required Plaintiffs to lay off several employees.  Thus, WOT Defendants calculated

that if the alleged financial harm Plaintiffs claim to have suffered represents *at least* the salaries

of several employees and that alleged harm was ongoing for more than year and continuing, it

was reasonable to conclude that Plaintiffs' claimed damages exceeded $75,000.  Such a

reasonable deduction is expressly approved of by the Eleventh Circuit in *Pretka* and *Roe*.

Second, in addition to actual damages, Plaintiffs allege that they have been exposed to

"distrust, hatred, contempt, ridicule and embarrassment."  Compl. ¶ 89.  As to the damages for

this type of harm, the citation to *Coton v. Televised Visual X-Ography, Inc.*, 2010 U.S. Dist.

LEXIS 96887, at *34 (M.D. Fla. Sept. 16, 2010), in the Notice of Removal is relevant because,

although in a different context (assessing the appropriate amount of damages after a default), the

court in *Coton* was utilizing its judicial experience and common sense to discern the value of a

claim.  This is precisely what the Eleventh Circuit in *Roe* authorized courts to do when whether a

claim more likely than not exceeds the jurisdictional requisition in deciding a motion for remand.

*See Roe*, 613 F.3d at 1062 n.5 (noting that "[t]he ability of courts to use their judicial experience

and common sense to evaluate the claims before them is unique to neither our Circuit, nor this

context," and citing as another example where a trial court "determine[s] whether remittitur is

appropriate, based on the trial court's judgment of what award would reasonably be supported by

a given claim or set of claims").  Moreover, in evaluating the scope of defamation damages, the

court in *Coton* considered several distinct cases, and specifically cited to a jury verdict in

*Fleming v. Gadsden County Times*, 1988 WL 500044 (Fla. Cir. Ct. 1988), as an example of a

"jury award of $865,000 in compensatory damages for a newspaper article linking the plaintiff and his company to a federal criminal investigation," 2010 U.S. Dist. LEXIS 96887, at *35-36. Those allegations are not dissimilar from the alleged defamatory statements posted online in this case.  *See* Compl. ¶¶ 51, 60, 64 (alleging defamatory comments accusing Plaintiffs "of on-going criminal and fraudulent activity").  The addition of this form of potentially substantial damages to the damages sought for actual harm, which as explained above alone more likely than not exceed the requisite amount, removes any doubt that the amount in controversy in this case is in excess of $75,000.

Third, in employing its own judicial experience and common sense to discern whether the Complaint establishes the jurisdictional amount, the Court should also consider the value of the injunctive relief sought.  *See* Compl. ¶¶ 148-153.  In determining the amount in controversy, the value of injunctive relief is measured from the plaintiff's perspective; i.e., "the amount the plaintiff would recover or *avoid losing* if the injunction was granted."  *Davis Tune, Inc. v. Precision Franchising, LLC*, 2005 U.S. Dist. LEXIS 38940, at *6 (N.D. Fla. May 20, 2005) (emphasis added).  Thus, if the amount of the actual alleged harm in terms of lost customers and business relationships to date represents the salaries of several employees, the value of the injunctive relief would be at least that amount multiplied by as many years in the future as Plaintiffs intend to conduct their business.

Fourth, Plaintiffs are also seeking punitive damages.  Compl. Relief Requested ¶ A.  "The law is clear that the amount in controversy includes not only compensatory damages, but punitive damages as well."  *Renfroe v. Allstate Prop. & Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 111336, at *12 (S.D. Ala. Sept. 23, 2010); *see also Ryan v. State Farm Mut. Auto. Ins. Co.*, 934

F.2d 276, 277 (11th Cir. 1991) (noting that plaintiff's claim for punitive damages  "raise[d] the amount in controversy to a sufficient level to acquire federal jurisdiction").  As set forth above, it is apparent that the amount of actual damages claimed exceeds the required amount in controversy.  Nonetheless, to the extent there is any ambiguity on that point, the additional request for punitive damages further confirms that the total amount in controversy in this case is in excess of $75,000.  *See Renfroe*, 2010 U.S. Dist. LEXIS 111336, at *13 (ruling that where plaintiff sought compensatory damages less than $75,000, even those the plaintiff had not sought a specific amount of punitive damages, "reasonable minds can logically conclude" that, if plaintiff's claims were proven, the punitive damages sought by plaintiff coupled by the compensatory damages would be sufficient to satisfy the required jurisdictional amount).

Finally, Plaintiffs also seek attorneys' fees.  Although, attorneys' fees are not typically included in the calculation of the amount in controversy, they are included where attorneys' fees are sought pursuant to a particular statutory provision that authorizes the award of attorneys' fees.  *See*, *e.g.*, *Davis Tune, Inc.*, 2005 U.S. Dist. LEXIS 38940, at *7.  Here, Plaintiffs have asserted a claim under the Florida Deceptive and Unfair Trade Practice Act, Compl. ¶¶ 142-147, which includes an attorneys' fee provision, Fla. Stat. § 501.2105, specifically invoked by Plaintiffs in the Complaint.  Thus, the addition of attorneys' fees as relief sought further substantiates that the amount in controversy exceeds the jurisdictional requirements.

In sum, WOT Defendants' reasonable deductions, inferences, and extrapolations establish that the amount in controversy implicated by Plaintiffs' claims—including actual damages for the alleged harm to its business, defamation damages for allegedly being exposed to distrust, hatred, contempt, ridicule and embarrassment, the value of the injunctive relief sought, punitive

damages, and attorneys' fees— "more likely than not" exceeds $75,000.  It is extremely

disingenuous for Plaintiffs to half-heartedly suggest otherwise, particularly in light of having

previously pled that damages for similar allegations involving Mr. Difrawi's companies

exceeded that amount.  Accordingly, Plaintiffs' motion for remand on the basis that the

jurisdictional amount in controversy requirement is not satisfied must be denied.

### C.     Plaintiffs Are Not Entitled To Costs or Fees

Because Plaintiffs' motion for remand must be denied, there is no basis for Plaintiffs to

seek costs or fees.  When considering the two grounds asserted by Plaintiffs in seeking remand, it

is particularly egregious that Plaintiffs would even make such a claim.

Plaintiffs' first argument in favor of remand is premised on *Plaintiffs' own error* in

incorrectly serving a third party who has no connection with this lawsuit.  It is incredible that

Plaintiffs would contend that the notice of removal was procedurally defective based on their

Plaintiffs' own procedural error.  More fundamentally, however, Plaintiffs' argument ignores the

well-established rule that a nominal defendant against whom a plaintiff does not actually have a

claim need not join in or consent to removal.  Based on this rule, Plaintiffs' argument that Mr.

Stalder's failure to join in the notice of removal required remand was legally baseless.

Plaintiffs' second argument for remand is that there is no jurisdiction because the amount

in controversy requirement is not satisfied.  Plaintiffs had such little confidence in their second

ground for remand, that they failed to even raise the issue during the Rule 3.01(g) conference.

Particularly troubling, however, is Plaintiffs' repeated reliance on *Lowery v. Alabama Power

Co.*, 483 F.3d 1184 (11th Cir. 2007).  As the Eleventh Circuit explained in *Pretka*, "*Lowery* was

a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and

the decision must be read in that context." 608 F.3d at 747; *see also id* at 761-67; *Roe*, 613 F.3d at 1061 n.3 (denying motion for remand where "Plaintiff's arguments are grounded primarily in misapplied dicta from *Lowery*"). "While some of the language of the opinion sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case . . . is concerned." *Pretka*, 608 F.3d at 747.

This case, like *Pretka* and *Roe*, is a § 1446(b) first paragraph case because Defendants have sought to remove within 30 days after service of the Complaint.[2] Specifically, as to this type of case, the Eleventh Circuit concluded that "*Lowery*'s dicta about the type of evidence a defendant that removes a case under the first paragraph of § 1446(b) may use in establishing the requisite amount in controversy" is not persuasive. *Id.* Notwithstanding this recent Eleventh Circuit precedent, Plaintiffs' argument as to costs is premised entirely on the disapproved dicta in *Lowery*. *See* Motion for Remand at 8-9. It is egregious that Plaintiffs would criticize WOT Defendants' legal research while citing inapplicable dicta and failing to cite to the Court the most recent, controlling, and relevant Eleventh Circuit precedent.

Under these circumstances, there was no basis for Plaintiffs to seek fees or costs in filing the motion for remand. If anything, Defendants should be awarded their costs and fees associated with having to defend against this meritless motion while Plaintiffs have inexcusably delayed in even responding to WOT Defendants' well grounded Motion to Dismiss.

---

[2] By comparison, a § 1446(b) second paragraph case, is when removal is sought after the initial 30 day period when discovery reveals that the case is removal based on facts not apparent from the face of the complaint. *See Roe*, 613 F.3d at 1060 n.2.

## IV.     CONCLUSION

For the foregoing reasons, WOT Defendants respectfully request that this Court deny

Plaintiffs' Motion for Remand.

Dated:  January 18, 2011

*Of Counsel:*

Sandra A. Jeskie
(admitted *pro hac vice*)
jeskie@duanemorris.com
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone:  215.979.1395
Facsimile:  215.979.1020

**DUANE MORRIS LLP**
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: 305.960.2200
Facsimile:  305.960.2201


_____s/ Warren D. Zaffuto_____
Harvey W. Gurland, Jr., P.A.
Florida Bar No.:  284033
HWGurland@duanemorris.com
Warren D. Zaffuto
Florida Bar No. 0743461
WDZaffuto@duanemorris.com

*Counsel for Defendant WOT Services, Ltd. and*
*Against Intuition, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of January, 2011, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF which will send a notice of electronic filing to the following:   **Myra P. Nicholson, Esq.**, Myra Nicholson, P.A., 1743 Park, Center Drive, Orlando, Florida 32825.

_____ s/ Warren D. Zaffuto _____

Warren D. Zaffuto

DM1\2462162.1